OPINION
Plaintiff-appellant, Anthony J. Pascarella, appeals a decision of the Clinton County Court of Common Pleas denying his motion for summary judgment and granting summary judgment to defendant-appellee, ABX Air, Inc. ("ABX"). We affirm in part and reverse in part.
On October 24, 1998, Pascarella was a DC-9 captain employed by ABX. On that morning, he piloted an ABX airplane from Wilmington, Ohio to Tampa, Florida. Pascarella arrived in Tampa shortly after 7:00 a.m. on Friday, October 28, but he was not scheduled to return to Wilmington until 10:21 p.m. on Monday, October 31, 1994. Thus, Pascarella had a three-day layover in Tampa.
Shortly after he arrived in Tampa on October 28, Pascarella checked into the hotel assigned to him by ABX, the Radisson Harbor Bay. As part of a union agreement, ABX was required to provide pilots with suitable accommodations during layovers. In Tampa, ABX had contracted with a travel company that, in turn, had contracted with Radisson to provide accommodations for ABX pilots on layover.
Pascarella did not stay at the Radisson that weekend, however. He also did not check out of the hotel. Keeping his hotel room, Pascarella returned to the Tampa airport later the morning of October 28 and flew back to his home in Dayton, Ohio. After spending the weekend in Dayton with his family, Pascarella returned to Tampa on Monday morning, October 31. Pascarella arrived in Tampa around noon and went to the Radisson to reclaim his room. His original room had been assigned to another patron. Pascarella was given a different room with a sliding glass door that led to a balcony. At about 3:00 p.m., Pascarella opened the sliding glass door to step out on the balcony. In doing so, Pascarella received an electric shock to his right hand and arm. As a result of this injury, Pascarella was unable to work for about two weeks.
Pascarella filed for workers' compensation. His claim was allowed, but ABX successfully appealed, resulting in the denial of Pascarella's claim by Ohio's Industrial Commission. Pascarella filed a timely notice of appeal with the Clinton County Court of Common Pleas. In June 1996, ABX moved for summary judgment. Pascarella filed a cross-motion for summary judgment along with a memorandum opposing ABX's motion. In December 1997, the common pleas court granted the motion for summary judgment filed by ABX and denied Pascarella's motion, finding:
 The issue before the Court is whether the Plaintiff sustained this injury in the course of his employment * * *.
 The Court * * * finds that under the totality of the circumstances that Plaintiff's injury did not arise from his employment. The Court further finds that it is undisputed that the accident occurred while the Plaintiff was off duty and had no work responsibilities or even an obligation to inform ABX of his whereabouts.
Pascarella appealed.
On appeal before this court, Pascarella presents one assignment of error for review. He complains that the trial court erred in finding that his injury did not "occur in the course of his employment" and that it did not "arise from his employment."
I. Standard of review
In general, appeals of Ohio state agency decisions occur pursuant to Ohio's Administrative Procedure Act ("APA"), R.C. 119.01
et seq. Under the APA, the trial court reviews an agency's decision to determine whether it is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. If an appeal is taken from that decision, this court reviews the judgment of the court of common pleas to "determine the correctness of the judgment * * * that the order of the agency is not supported by any reliable, probative, and substantial evidence." Id.
This standard of review does not apply to every agency action, however. R.C. 119.01 lists the agencies that are subject to its appeals provisions and expressly excludes other agencies and actions from its provisions. Actions of the industrial commission or the bureau of workers' compensation involving adjudication of workers' compensation claims are expressly excluded from the APA. R.C. 119.01(A).[1] See, also, Whiteside, Ohio Appellate Practice (1998 Ed.) 153, Section 9.18-20 ("R.C. 119.01(A) expressly excludes certain actions of named agencies * * * as follows: [a]ctions of the Industrial Commission or the Bureau of Workers' Compensation with respect to adjudication of workers' compensation claims * * *").
Decisions of the industrial commission concerning the right of an employee to participate in the state's workers' compensation fund may be appealed to a court of common pleas under R.C.4123.512 ("Appeal to court of common pleas * * *"). Such appeals are governed by the Ohio Rules of Civil Procedure. See R.C.4123.512(E).[2] They are subject to de novo review by the common pleas court. Zuljevic v. Midland-Ross (1980), 62 Ohio St.2d 116,118; State ex rel. Federated Dept. Stores, Inc. v. Brown (1956), 165 Ohio St. 521, paragraph two of the syllabus. If the trial court enters summary judgment in this situation, an appellate court employs a de novo standard of review. See Jennings v. Trimble (Nov. 2, 1995), Jackson App. No. 94CA754, unreported, at 7-8 ("[a]n appeal from a summary judgment entered in this type of [workers' compensation] case is then also conducted under a de novo standard of review").
In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, citing Midwest Specialties, Inc. v. Firestone Co. (1988), 42 Ohio App.3d 6, 8. We also follow the standards set forth in Civ.R. 56(C). Summary judgment is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds construing the evidence in favor of the nonmoving party could reach but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); Bostic v. Connor (1988), 37 Ohio St.3d 144, 146. In a workers' compensation case, an appellate court may uphold the trial court's entry granting summary judgment to the employer if the undisputed evidence does not establish the essential elements of a claim for participation in the fund. Carrick v. Riser Foods, Inc. (1996), 115 Ohio App.3d 573, 578; Silvers v. Elco Steel Co. (Dec. 15, 1997), Fayette App. No. CA97-06-016, unreported, at 3.
II. Elements of a compensable injury
In order for an employee's injury to be compensable by the state workers' compensation fund it must be "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). (Emphasis added.) This test is conjunctive; both prongs of the formula must be satisfied before compensation will be allowed. Fisher v. Mayfield (1990), 49 Ohio St.3d 275,277. As a general rule, the Ohio workers' compensation statutes must be "liberally construed in favor of employees." R.C. 4123.95; Fisher at 278. It is "axiomatic" that this rule of construction applies to the phrase "in the course of, and arising out of." Id.
A. "In the course of"
The Ohio Supreme Court recently defined "in the course of employment":
 The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. * * * "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." * * * An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.
Ruckman v. Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117, 120. (Citations omitted.)
The determination of whether an injury occurs in the course of employment requires courts to look at the "time, place, and circumstances" of the injury. Ruckman, 81 Ohio St.3d at 120, citing Fisher v. Mayfield, 49 Ohio St.3d at 277. "[I]f the injuries are sustained [off premises], the employe[e] * * * must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs." Ruckman at 121, quoting Indus. Comm. v. Bateman (1933), 126 Ohio St. 279.
In the workers' compensation context, a traveling employee is one whose "work entails travel away from the employer's premises." 2 Larson, Workers' Compensation Law (1997) 5-286, Section 25.00. Other jurisdictions have found pilots, drivers, and train engineers to be traveling employees. See American Airlines v. LeFevers (Fla.Dist.Ct.App. 1996), 674 So.2d 940, and Continental Airlines v. Industrial Comm. (Colo.App. 1985),709 P.2d 953 (airline flight attendants); Thomas v. Grigorescu,582 F. Supp. 514 (S.D.N.Y. 1984), aff'd, (2d. Cir. 1984), 751 F.2d 371 (Amtrak employees); Ford v. BiState Dev. Agency (Mo.App. 1984),677 S.W.2d 899 (bus drivers); Hobgood v. Anchor Motor Freight (N.C.App. 1984), 316 S.E.2d 86; and Suburban Ready Mix Concrete v. Zion (Ind.App. 1983), 443 N.E.2d 1241 (truck drivers).
The "traveling employee" doctrine sets forth the general rule for determining when such employees are in the course of their employment:
 Employees whose work entails travel away from the employer's premises are * * * within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.
2 Larson, Workers' Compensation Law, Section 25.00, 5-286 (1997). (Emphasis added.)
The few Ohio courts that have considered injuries to traveling employees in a workers' compensation context seem to adopt the "personal errand" exception to this rule. We infer from their reliance on the exception that they consider the rule itself to be alive and well. See, e.g., Elsass v. Commercial Carriers, Inc. (1992), 73 Ohio App.3d 112. In Elsass, an "off-duty" truck driver was held not in the course of his employment when he was injured in a taxi cab while looking for a meal and some "action" some distance from both his employer-reimbursed motel room and the point of delivery and pick-up. In reaching this conclusion, the court did not reject Elsass' claim because he was "off-duty," but because his destination in the cab was too remote in "time, space and purpose" from any place connected to his employment.
The Second Appellate District found that an employee attending an out-of-state conference was in the course of employment while she was at the conference and even while she was attending conference functions, such as a bus tour. However, when the employee was injured in souvenir shop, the court found that she was outside the course of her employment and on a "purely personal mission of her own, having nothing to do with her employer's purposes." Marbury v. Industrial Comm. of Ohio (1989), 62 Ohio App.3d 786, 790.
A corollary to the "traveling employee doctrine" is the "hotel-fire doctrine" which states: "a traveling employee who dies as a result of a fire or asphyxiation in a hotel or motel during [a] business trip is within the coverage of the compensation acts." 2 Larson, Workers' Compensation Law (1997), Section 25.10, 5-287. This rule has been extended in courts of other jurisdictions to cover a wide range of injuries in addition to asphyxiation, including "getting one's head caught in the slats of a motel bed, falling out of a hotel window, inexplicably falling striking one's head on the floor while checking out," and a variety of criminal assaults taking place in hotels. Larson, 25.10 5-290-291 (Footnote superscripts and citations omitted). The rationale behind the rule is the following:
 there is no difference in principle between the employee who is housed upon the employer's own premises and the employee who is housed in a hotel room paid for by the employer. If an employer took a lease of a building adjacent to the premises and required workers to live there, they would have the benefit of the rules applicable to workers who live on the premises; it is no different when the employers [sic] takes a "lease" of a single hotel room and lodges the traveling employee there. The latter employee may indeed have a choice between several hotels; that is not the point. The point is that there is no choice but to live in some hotel away from home.
Larson, Section 25.10, 5-289.
In Ohio, the Eighth Appellate District has held that an employee's injury sustained in a hotel room paid for by the employer occurred "in the course of" employment. See Weaver v. Eaton Corp. (May 3, 1990), Cuyahoga App. No. 56897, unreported. The appellate court concluded that the "in the course of" requirement was met because:
 Eaton [the employer] contemplated that Weaver's employment would require Weaver to obtain temporary shelter during the week, because Eaton paid for the shelter, and because the injury was sustained in that shelter.
But cf., Kemper v. Daugherty (Feb. 11, 1981), Lorain App. No. 3125, unreported (off-duty security guard killed in hotel room paid for by his employer was not in the course of his employment because the injuries occurred some miles from the job site, his death was not "related to his day by day work," the employer had no control over the motel, received only an incidental benefit from the employee's staying there, and did not require employees to stay at that particular motel).
Since there is relatively little case law in Ohio addressing traveling employees or hotel-room injuries, the law of other jurisdictions is instructive. In particular, Florida's appellate courts have considered the traveling employee rule as it applies to flight personnel. Florida appears to have adopted the general rule that: "An employee whose work entails travel away from the employer's premises is within the course of his employment at all times during the trip other than when there is a distinct departure for a nonessential personal errand," N. L. Auto Parts Company v. Doman (Fla. 1st DCA 1959), 111 So.2d 270, 271-272, and the more specific rule that "an airline employee during a layover is in the course of employment." Pan American World Airways v. Wilmot (Fla. 1st DCA 1986), 492 So.2d 1373, 1373.
Having considered the foregoing and the record in this case, we find that there is a genuine issue of material fact raised as to whether Pascarella was in the course of his employment when he was injured. First, we find that Pascarella fits the definition of a "traveling employee." As a traveling employee, Pascarella's injury could be found to have occurred in the course of his employment under one or both of two theories.
Under the "traveling employee" doctrine, Pascarella would be in the course of his employment the entire time he was traveling except when he was on a personal errand. Pascarella was on a personal errand when he flew to Dayton to see his family, a fact that ABX emphasizes on appeal. However, once Pascarella returned to the Radisson to wait for his return flight, the personal errand ended. Pascarella was again in the course of his employment.
Second, under the hotel-fire doctrine, Pascarella would be in the course of his employment while he was staying in the hotel during layover. ABX contends that Pascarella's employment responsibilities did not extend to his stay at the hotel during his layover. Pascarella disagrees, arguing that each day of a "layover" is a scheduled day of work because the pilot is away from his base.
We find the following view of the "layover" period to be persuasive:
 a `layover period required by the employer is not a breach in the employment relationship, which is also not breached by recreational activities during the wait for resumption of actual duties.' * * * The employee was found to be in the course of his employment even though his only `job duty' was to wait for his haul in the morning. The waiting was for the employer's convenience and being available to haul the employer's goods the next morning was the activity furthering the employer's business.
Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Pa.Commw. 1987), 532 A.2d 1257, 1260.
In this case, the union's collective bargaining agreement defines a "layover" as a "scheduled or unscheduled duty break or legal rest at a layover station for the purpose of continuing a trip or returning to domicile." ABX was required to provide pilots on layover with "suitable single occupancy lodging in a suitable location at the Company's expense." ABX had negotiated a rate with the Radisson that was presumably favorable to ABX. Therefore, having Pascarella stay there was, arguably, a benefit to ABX. For his part, Pascarella claims that his presence at the hotel "promoted and furthered ABX's business by ensuring both that he would be well-rested before flying * * * and that the company would be in compliance with [FAA] requirements." In addition, Pascarella stated in his deposition testimony that he was paid wages for the period of time he was on layover and that his actions were somewhat limited by FAA regulations and certain company policies. He was, for example, not permitted to drink or go scuba diving some hours prior to piloting a plane.
Viewing the evidence most strongly in Pascarella's favor, and mindful that workers' compensation claims should be construed liberally in favor of the employee, R.C. 4123.95, we find that there is a genuine issue of material fact as to whether Pascarella was in the course of his employment while he was staying at the Radisson Hotel on Monday, October 31, 1994.
2. "Arising out of"
Even if Pascarella's injury occurred "in the course of employment," it will not meet the statutory definition of R.C. 4123.01(C) unless it also arose out of his employment. Both elements are required for recovery from the workers' compensation fund. Ruckman, 81 Ohio St.3d at 121, citing Fisher v. Mayfield,49 Ohio St.3d at 277. Whether an injury arises out of employment is a question of fact. See Pilar v. Ohio Bureau of Workers' Compensation (1992), 82 Ohio App.3d 819; Dolby v. General Motors Corporation (1989), 62 Ohio App.3d 68.
The "arising out of" prong denotes a causal connection between the employment and the injury. Fisher at 277-278. To determine whether a sufficient causal relationship exists, Ohio courts employ a "totality of the facts and circumstances" analysis. That test requires analysis of the following facts and circumstances:
 (1) the proximity of the scene of the accident to the place of employment;
 (2) the degree of control the employer had over the scene of the accident; and
 (3) the benefit the employer received from the injured employee's presence at the scene of the accident.
Ruckman at 122, quoting Lord v. Daugherty (1981), 66 Ohio St.2d 441, syllabus. This list of factors is not exhaustive, but is intended, instead, to be illustrative of the factors that need to be considered. Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 279, at fn.2.
In undertaking this analysis, some Ohio courts have found that an injury arose out of employment even when all three of the Lord factors were not met. In Durbin v. Ohio Bureau of Workers' Compensation (1996), 112 Ohio App.3d 62, the First Appellate District did not even address each of the Lord factors, but appears instead to have applied a "but for" test to determine whether a traveling employee's injury arose out of employment. In Durbin, the employee sought workers' compensation benefits for injuries from an accident that occurred when he was stopped in traffic on the way to answer a page from his employer. The employee was not near his place of employment, nor did the employer exert any control over the scene of the accident (the highway). Nonetheless, the court expressly rejected the appellees' argument that failure to satisfy each of the three factors cited in Lord should defeat compensation. Applying a "liberal construction to the words * * * arising out of," the court ruled in favor of the employee, holding that "were it not for answering the electronic page from his employer, [the employee] would not have exited from the highway at that location." Durbin at 69.
In the aforementioned case, Weaver, where the employee was asphyxiated in his hotel room, the Eighth Appellate District found that Weaver's death "arose out of" his employment even though the "employer-control" prong of the Lord test was not met. The court reasoned that the injury arose out of employment because: (1) the hotel was "in relatively close proximity" to the plant; and, (2) the employer derived a benefit from Weaver's stay at the hotel because the employer was given a special rate and because Weaver could begin his employment before he got his family settled in permanent housing.
In the case at bar, it is evident that not all of the Lord factors are satisfied. First, as to the proximity of the accident to the place of employment, Pascarella argues that he satisfies the proximity test because the Radisson essentially became his place of employment since it was assigned to him by ABX. ABX, on the other hand, argues that the injury did not occur proximate to Pascarella's work site because it was about ten miles from the airport. ABX reaches this conclusion by comparing the distance of ten miles to lesser distances in other cases where compensation has been denied.
Second, it is clear that ABX exerted no control over the Radisson. Pascarella does not argue that ABX controlled the hotel, but asserts instead that by selecting the hotel it exercised "some degree of control over the cause of Mr. Pascarella's injury."
Finally, ABX contends that Pascarella's presence at the hotel did not benefit ABX. Pascarella argues the opposite, relying chiefly on the position that ABX benefitted from Pascarella's staying in the hotel by having a pilot who was rested and ready for his flight.
Failure to satisfy each of the elements of the Lord test does not end the inquiry, however. Additional facts or circumstances may compel a finding of causation. See Ruckman,81 Ohio St.3d at 122; Stivison v. Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498,500. "[W]orkers' compensation cases are, to a large extent, very fact specific. As such, no one test or analysis can be said to apply to each and every factual possibility." Fisher v. Mayfield, 49 Ohio St.3d at 280. Indeed, relying solely on the Lord test would deny compensation for nearly all off-site injuries.
Tests for causation have developed in certain special areas, e.g., "recreational activity" cases, "coming and going" cases, and special hazard" rule cases. In addition, some other jurisdictions have created such tests specifically for traveling employees. See, e.g., Wright v. Industrial Commission (1975),62 Ill.2d 65, 338 N.E.2d 379 (test for determining whether an injury to a traveling employee arose out of and in the course of his employment is the reasonableness of the conduct in which he was engaged and whether it might normally be anticipated or foreseen by the employer).
In Ohio, we have not found any established test for causation specifically for traveling employees. However, bearing in mind that "the Lord test "enumerated factors are not intended to be exhaustive and the totality-of-the-circumstances test may continue to evolve," Ruckman (emphasis added), we find that reasonable minds could conclude that Pascarella's injury arose out of his employment. Were it not for the fact that ABX assigned Pascarella to the Radisson during his layover in Tampa, he would not have been there at all. See Durbin.
In summary, we find that the trial court improperly granted the motion for summary judgment filed by ABX because, viewing the evidence in the light most favorable to the nonmoving party, a genuine issue of material fact exists as to whether Pascarella's injury was in the course of and arose of his employment. The assignment of error is therefore overruled, and we affirm the trial court's decision denying Pascarella's motion for summary judgment. The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
YOUNG, P.J., concurs.
POWELL, J., dissents.
[1] R.C. 119.01(A) states that "Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to4123.94 * * *."
[2] R.C. 4123.512(E) states that "[a]ppeals from the judgment [of the industrial commission] are governed by the law applicable to the appeal of civil actions."