FISHER, APPELLANT, *v.* MAYFIELD ET AL., APPELLEES.

[Cite as Fisher *v.* Mayfield (1990), 49 Ohio St. 3d 275.]

(No. 88-1764—Submitted November 15, 1989—Decided March 14, 1990.)

276

*Elliott, Heller & Maas, Richard L. Magill, Steven D. Maas, Stewart Jaffy & Associates Co., L.P.A.,* and *Stewart R. Jaffy,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Michael L. Squillace, Mark E. Mastrangelo* and *Timothy J. Krantz,* for appellees James L. Mayfield, Administrator, Bureau of Workers' Compensation, and Industrial Commission.

*Cloppert, Portman, Sauter, Latanick & Foley, Frederick G. Cloppert, Jr., Frederic A. Portman* and *Charles J. Smith,* urging reversal for *amicus curiae* United Auto Workers.

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines, Barry Laine* and *Ronald E. Slipski,*

urging reversal for *amicus curiae* Ohio Education Association.

ALICE ROBIE RESNICK, J. The sole issue before this court is whether appellant's injury arose "out of and in the course of her employment," thus bringing the injury within the parameters of R.C. 4123.01(C).

R.C. 4123.01(C) provides in pertinent part: " 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. * * *" Ohio's workers' compensation statute, as do those of the vast majority of states, contains the basic coverage formula: "in the course of, and arising out of" employment. A leading scholar in this area of the law, Professor Larson, has noted that "[t]he heart of every compensation act, and the source of most litigation in the compensation field, is the coverage formula. * * * Few groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation. * * *" 1 Larson, The Law of Workmen's Compensation (1984) 3-1 to 3-3, Section 6.10.

In *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302, 15 O.O. 3d 359, 401 N.E. 2d 448, this court set forth the general rules applicable to the issue of coverage under the Ohio Workers' Compensation Act, as follows:

"An injury sustained by an employee is compensable under the Workers' Compensation Act only if it was 'received in the course of, and arising out of, the injured employee's employment.' R.C. 4123.01(C); R.C. 4123.54; *Fassig* v. *State, ex rel. Turner* (1917), 95 Ohio St. 232.

"The test of the right to participate in the Workers' Compensation Fund is not whether there was any

fault or neglect on the part of the employer or his employees, but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment. *Indus. Comm.* v. *Weigandt* (1921), 102 Ohio St. 1; *Indus. Comm.* v. *Gintert* (1934), 128 Ohio St. 129; *Fox* v. *Schiele* (1955), 162 Ohio St. 569." *Id.* at 303, 15 O.O. 3d at 360, 401 N.E. 2d at 449-450.

One year after *Bralley, supra,* we refined the "arising out of" element by considering the "totality of the circumstances" test for determining whether a causal connection existed between an employee's injury and his employment. In *Lord* v. *Daugherty* (1981), 66 Ohio St. 2d 441, 20 O.O. 3d 376, 423 N.E. 2d 96, we held at the syllabus:

"Whether there is a sufficient 'causal connection' between an employee's injury and his employment to justify the right to participate in the Workers' Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident."

We now expressly recognize the conjunctive nature of the coverage formula of "in the course of and arising out of" the employment. Therefore, all elements of the formula must be met before compensation will be allowed.

Traditionally, other jurisdictions have bifurcated the basic coverage formula but have required that both prongs exist. The "in the course of" prong is construed to relate to the time, place and circumstances of the injury, while the "arising out of" prong is interpreted as referring to a causal connection between the employment and the injury. *Larson, supra,* at 3-3, Section 6.10. See, also, *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1982), 133 Cal. App. 3d 643, 652, 184 Cal. Rptr. 111, 116.

Likewise, other jurisdictions have adhered to the principle that each prong of the formula must therefore be satisfied before compensability will be allowed. *Maher* v. *Workers' Comp. Appeals Bd.* (1983), 33 Cal. 3d 729, 190 Cal. Rptr. 904, 661 P. 2d 1058; *Malacarne* v. *Yonkers Parking Auth.* (1976), 41 N.Y. 2d 189, 391 N.Y. Supp. 2d 402, 359 N.E. 2d 992; *Strother* v. *Morrison Cafeteria* (Fla. 1980), 383 So. 2d 623. "This two-pronged requirement is the cornerstone of the workers' compensation system." *Maher, supra,* at 732-733, 190 Cal. Rptr. at 905-906, 661 P. 2d at 1056-1060. In *Strother,* the Supreme Court of Florida embarked on a well-reasoned analysis as to whether that court had developed inconsistent constructions of the basic coverage formula, stating as follows:

"Although in several decisions, we have referred to the distinct and separate nature of the two elements of 'arising out of' and 'in the course of,' we have also, in other decisions, tended to merge these factors together into a test of work connectedness." *Id.* at 624-625. The court went on to hold that "to be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances." *Id.* at 628.

Consistent with our decision and case law from other jurisdictions, we continue to interpret "in the course" to associate with the time, place and circumstances of the injury. The "aris-

ing out of'' element, as noted earlier, contemplates a causal connection between the injury and the employment. In *Lord, supra,* we announced three distinct factors to aid in determining whether a sufficient causal relationship existed, based upon the totality of the facts and circumstances.

In Ohio, as well as in other jurisdictions, it is well-established that workers' compensation statutes must be liberally construed in favor of the employee. R.C. 4123.95. Thus, it is axiomatic that the phrase ''in the course of, and arising out of'' must be accorded a liberal construction. ''In applying it [the coverage formula], this court must be guided by the * * * fundamental principle that the requirement is to be liberally construed *in favor of awarding benefits.''* (Emphasis sic.) *Maher, supra,* at 733, 190 Cal. Rptr. at 906, 661 P. 2d at 1060.

We will now apply the appropriate analysis to the facts of the present case. Appellant was injured while she was going to her school, and approximately fifteen minutes before she was to begin work. Appellant's injury was sustained at another school within the same district where she is employed. Lastly, the school at which appellant taught was, as stipulated, ''approximately one to one-half miles'' from the school where the injury occurred. Therefore, it is clear that appellant was injured minutes before she was to begin work and at a place under the control of her employer. When considering the circumstances under which appellant was injured, we find appellant has sufficiently demonstrated that her injury was ''in the course of'' her employment.[1]

As noted earlier, whether appellant's injuries arose out of her employment is determined from the totality of the circumstances, using the

---

[1] In *Sebek* v. *Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E. 2d 892, we stated at the third paragraph of the syllabus that ''[t]o be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer. It is sufficient if he is injured in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment.'' Justice Zimmerman, writing for a unanimous court, cited the following cases as applying this rule: *''DeCamp* v. *Youngstown Municipal Ry. Co.,* 110 Ohio St. 376, 144 N.E. 128, injury received while workman was alighting from a street car and while on way to work, where the furnishing of transportation by employer was a part of the employment contract; *Industrial Commission* v. *Barber,* 117 Ohio St. 373, 159 N.E. 363, fatal injury received while employee was on way to work on street maintained by employer; *Industrial Commission* v. *Davison,* 118 Ohio St. 180, 160 N.E. 693, injury, resulting in death, occurring immediately before delivering an address incidentally promoting employer's interests; *Industrial Commission* v. *Henry,* 124 Ohio St. 616, 180 N.E. 194, fatal injury after beginning work and while returning thereto after eating breakfast at nearby restaurant in accordance with sanctioned custom; *Kasari* v. *Industrial Commission,* 125 Ohio St. 410, 181 N.E. 809, 82 A.L.R. 1040, fatal injury on employer's premises while en route to place of work; *Spicer Mfg. Co.* v. *Tucker,* 127 Ohio St. 421, 188 N.E. 870, death from infection following vaccination during working hours which vaccination was ordered by employer; *Outland* v. *Industrial Commission,* 136 Ohio St. 488, 26 N.E. 2d 760, fatal injury while at home to procure material for soliciting business for employer; *Parrott* v. *Industrial Commission,* 145 Ohio St. 66, 60 N.E. 2d 660, injury while on premises of employer to collect wages after termination of employment.'' *Id.* at 698-699, 36 O.O. at 284, 76 N.E. 2d at 895.

factors set forth in *Lord, supra.*[2] The first factor examines the proximity of the scene of the accident to the place of employment. Because we have already concluded that appellant was injured on her employer's premises, appellant satisfies this factor.

The second factor involves the degree of control the employer had over the scene of the accident. Appellees argue that the school board had no control over the voluntary actions of appellant in going to Kaiser Elementary School. However, the appellees misconstrue the analysis. The proper scrutiny entails the amount of control the employer had over the situs of the injury, and not the degree of control the employer had regarding the actions of its employees. In this respect, we find that the degree of control the employer had over the scene of the accident was at its apex. Clearly, it cannot be denied that the school board had complete control over the steps leading to and from one of its own schools, hence appellant has also satisfied the second factor.

The third factor announced in *Lord* explores the benefit to the employer. In *Kohlmayer* v. *Keller* (1970), 24 Ohio St. 2d 10, 12, 53 O.O. 2d 6, 7, 263 N.E. 2d 231, 233, we noted the benefits received by an employer when sponsoring purely social events. These benefits included a more harmonious working atmosphere, better job service and greater job interest. Likewise, we find a benefit in the heightened morale that naturally flows from the flower fund involved in the present case. This court is not alone in recognizing these types of benefits to an employer. See 1A Larson, *supra,* at

5-148, Section 22.30. Consequently, appellant has established the third factor as well.

When considering the totality of the facts and circumstances of this case, we find that the test set forth in *Lord, supra,* has been met. Thus, appellant has shown a sufficient causal connection between the injury and her employment to warrant a conclusion that the injury arose out of her employment. Likewise, appellant has demonstrated that her injury occurred while she was in the course of her employment.

The present case is a factually stronger case than many from other jurisdictions. See *Warthen* v. *Southeast Oklahoma State Univ.* (Okla. App. 1981), 641 P. 2d 1125 (death of teacher from heart attack on basketball court after he was requested to referee a game); *Heinz* v. *Concord Union School Dist.* (1977), 117 N.H. 214, 371 A. 2d 1161 (death of teacher in motorcycle accident after leaving home of a fellow teacher, where he had attended a party, consumed alcoholic beverages and was on his way home to change clothes and pick up his wife to chaperone a school dance); *Horvath* v. *Indus. Comm.* (1915), 26 Wis. 2d 253, 131 N.W. 2d 876 (teacher injured in accident on her way home to bathe and change clothes to return to Future Homemakers of America Banquet). All these teachers were found to be engaged in an activity "in the course of, and arising out of" their employment.

Appellant herein was on her way to her place of employment when the injury occurred at Kaiser Elementary, another school over which the school board had control. Furthermore, the

---

[2] This list of factors is not intended to be exhaustive, but rather is illustrative of the factors that need to be considered. In this manner, the totality-of-the-circumstances approach to workers' compensation cases may continue to evolve.

flower fund had been in existence for a considerable period of time before appellant was injured. In this sense, the employer was well aware of the fund, and indeed fully acquiesced to its perpetuation. The assertion that the fund was customary is well-founded in both fact and reason.

We note that when applying the analysis set forth above, a reviewing court must examine the separate and distinct facts of each case. Historically, similar fact patterns have promulgated their own set of rules. For example, the recreational activity cases have developed a unique group of tests, as well as the so-called "coming and going" cases. Professor Larson's treatise on workers' compensation categorizes the cases in his discussion as to the fact patterns involved. This is because workers' compensation cases are, to a large extent, very fact specific. As such, no one test or analysis can be said to apply to each and every factual possibility. Nor can only one factor be considered controlling. Rather, a flexible and analytically sound approach to these cases is preferable. Otherwise, the application of hard and fast rules can lead to unsound and unfair results.

Considering the above cases and our discussion of the appropriate analysis, to deny benefits to appellant in this case would lead to an inconsistent result. Therefore, the trial court erred in granting appellees' motion for summary judgment, and in denying appellant's motion for summary judgment. The judgment of the court of appeals is reversed and this cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., and HOLMES, J., dissent.

HOLMES, J., dissenting. I respectfully dissent from the majority opinion in this case which permits the employee to participate in the State Insurance Fund after being injured while collecting money for a flower fund at a location outside her fixed site of employment, and before normal working hours.

In order for appellant to establish a compensable injury she must show that it occurred in the course of and arising out of her employment with the Champion Local Board of Education. See *Ashbrook* v. *Indus. Comm.* (1939), 136 Ohio St. 115, 16 O.O. 42, 24 N.E. 2d 33; R.C. 4123.01(C). At present, a dual statutory requirement exists which states that an injury, in order to be compensable, must not only occur "in the course of * * * the * * * employment," but also "aris[e] out of * * * the * * * employment." These requirements flow from separate sources: the former requirement is constitutionally mandated in Section 35, Article II of the Ohio Constitution; while the latter is of judicial origin, which has been subsequently codified. One of the foremost published scholars on the Workers' Compensation Act, James Young, in his treatise, Workmen's Compensation Law of Ohio (2 Ed. 1971) 75, Section 5.3, points out that:

"In determining course of employment, the fundamental concern is the activity of the employee at the time of the injury. Is he doing something for his employer or for himself or another? That concern subdivides into constituent factors:

"a. the fact of payment or the expectation of payment;

"b. the source of payment;

"c. control over the activity and

by whom it is exercised, a most important factor;

"d. the situs of the employment, which may be fixed, semi-fixed or variable;

"e. the situs of the accident;

"f. a major factor is time, and there the time of the injury and the time of employment are both significant."

In ascertaining whether an employee's action is in the course of employment we have focused on whether the employee was performing the obligation of his or her contract of employment. See *Indus. Comm.* v. *Davison* (1928), 118 Ohio St. 180, 160 N.E. 693, paragraph two of the syllabus. An employee has been held to be within the course of his employment when he does such things which are usually and reasonably incidental to the work of his employer, including taking refreshments, rest and smoking. See *Taylor* v. *Indus. Comm.* (1920), 13 Ohio App. 262, 31 Ohio C.C. (N.S.) 390; see, also, *Sebek* v. *Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E. 2d 892 (where a meal is part of the employee's compensation an injury resulting from the eating of the meal was considered reasonably incidental to the duties of the contract). The determination of whether an activity is in the course of employment has often been combined with the element of arising out of the employment. The latter is said to be the causal connection of the employment to the injury. See *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302, 15 O.O. 3d 359, 401 N.E. 2d 448.

In deciding whether an employee's conduct is in the course of employment and arises out of the employment, the focus should be on the zone of employment and the benefit the employer has received through the conduct of the employee. The "benefit to the employer" analysis is generally utilized where the employee's conduct is outside a certain zone of employment. Specifically, where an accident occurs outside an identified zone of employment, the inquiry should include the nature of the employee's activity and its nexus to the actual duties of employment.

In reviewing the dual statutory requirement for establishing a compensable injury, this court in *Lord* v. *Daugherty* (1981), 66 Ohio St. 2d 441, 20 O.O. 3d 376, 423 N.E. 2d 96, addressed the issue of whether there was a sufficient causal connection to justify the injured party's right to participate in the State Insurance Fund by focusing upon the totality of the facts and circumstances regarding the accident. Such circumstances included:

"* * * (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Id.* at syllabus.

In applying the factors enunciated in *Lord* to the case *sub judice,* it is clear that appellant's accident was not in the course of or arising out of her employment. The accident occurred "one to one-half miles" from appellant's fixed site of employment. The only reason the employer had control over the place where appellant was injured was because Kaiser Elementary was one of the schools in the district. However, appellant had never worked at Kaiser before and went there of her own volition prior to normal working hours. The employer had no control over appellant's voluntary act of going to a different school where she had never been employed. The appellant had no reason to be at Kaiser except as a personal venture, *i.e.,* to collect for the

flower fund. The school board did not receive any benefit from appellant's presence at Kaiser. The school board had no direct participation or involvement in the flower fund, in that it did not sponsor or oversee the operation of the fund. Appellant's occupation was the business of instructing and supervising students at Central Elementary. It is possible that by picking up supplies or material for the purpose of instructing and supervising students a benefit would have been conferred on the employer, but such was not the case here. Rather, the action of appellant in the instant case was a benevolent gesture directed by a teacher for teachers. It had nothing to do with the business of educating students.

Appellant, along with *amicus curiae* United Auto Workers, asserts that because the school board was aware of the flower fund and that certain members of management were voluntary participants in it, the school board recognized and sanctioned the flower fund as a custom incidental to employment. However, in reviewing the authority cited by appellant and *amicus* for their position, I find instances of *active* participation by the employer through paid breaks, permission to use equipment, sponsoring social outings and the providing of a final paycheck. None of the above activities involved merely the awareness of the employer of some course of action by the employee. Instead, the employer actively participated and consented to the activities.

Appellant and *amicus* United Auto Workers also contend that the school board received a business-related benefit from the existence of the flower fund in terms of increased morale through a greater sense of teamwork, which resulted in improved relations with the administration. Moreover, it is asserted that an employee is not required to actively perform his or her assigned duties as long as he or she is doing an activity consistent with the employment contract. In reviewing our previous decisions on this issue, it is clear that there must be some significant involvement or participation by the employer relative to employee work or non-work-related activities, in order for the employer to obtain a significant business-related benefit. Essentially, to be entitled to workers' compensation an employee need not be injured in the actual performance of work for his or her employer. It is sufficient if he or she is injured in a pursuit or undertaking consistent with his or her contract for hire and which in some logical manner pertains to or is incidental to his or her employment. See *Sebek, supra.*

The majority cites *Kohlmayer* v. *Keller* (1970), 24 Ohio St. 2d 10, 12, 53 O.O. 2d 6, 7, 263 N.E. 2d 231, 233, for an illustration of benefits received by an employer when sponsoring purely social events. However, *Kohlmayer* is distinguishable from the instant case. In *Kohlmayer,* an employee was injured at a company picnic. The picnic was sponsored, paid for and supervised by the employer for the purpose of generating friendly relations. Obviously, the majority fails to observe that in the present case, the school board did not sponsor or supervise it, nor was it affiliated with the flower fund. Therefore, it certainly cannot be said that the school board derived any benefit from the flower fund, since it had no involvement in it whatsoever. The flower fund operated on a purely voluntary basis and no notices or memoranda were posted by the employer informing employees as to collection procedures. The majority equates the board's failure to prohibit

the flower fund as a promotion of the fund. This idea is contrary to *Kohlmayer* and *Sebek,* where an affirmative act, namely, payment of compensation in the form of meals or financial support of a social activity, was made by the employer.

Thus, for the foregoing reasons, I must respectfully dissent from the opinion in this case, since I would affirm the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.