OPINION
This timely appeal arises from the decision of the Carroll County Court of Common Pleas wherein the court granted summary judgment to an employer on the basis that an employee's fatal injury had not been received in the course of, and arising out of, his employment. For the reasons set forth below, the decision of the trial court is reversed and this cause is remanded.
 I. FACTS
The facts giving rise to the present case concern the employment relationship between Larry A. Chain (referred to as "decedent" herein) and Kohler Coating Machinery Corporation ("appellee" herein). Appellee is involved in designing and customizing coating equipment for industrial applications. In that it has no manufacturing facility, appellee obtains orders from its customers for certain equipment and then locates vendors to machine and fabricate the equipment. Essentially, appellee is responsible for drafting the plans for', the construction of the equipment and then following through to assure that the vendor completes each project as specified. Decedent was employed by appellee as a manufacturing coordinator. His job duties consisted of scheduling and outsourcing the manufacturing orders to individual vendors for completion. As part of these duties, decedent was required to frequently check in with vendors to determine that they were on schedule in their construction of equipment and were properly completing the project.
Due to the nature of decedent's job duties, he spent the majority of his time traveling between vendors in order to place new orders or follow up on projects which were under construction. While he was a salaried worker and theoretically had an 8:00 a.m. to 5:00 p.m. schedule, decedent often was required to work evenings and Saturdays to make sure vendors completed projects on schedule. Furthermore, decedent controlled his own work schedule for the most part and would communicate such to his supervisor and assistant as he deemed necessary. Decedent's job responsibilities created a situation whereby he was considered a non-fixed situs employee.
On September 18, 1996 decedent met at appellee's headquarters with other employees for a morning meeting regarding two ongoing projects. One of the projects, which had been designated project number 9534, dealt with ongoing negotiations with Gormac Custom Manufacturing, Inc. ("Gormac") for the manufacture of a "mini spangle rig." Upon completion of the meeting, decedent traveled to a vendor in Kent, Ohio to place an order regarding one of appellee's projects. Having finished his business in Kent, decedent then proceeded to Hanoverton, Ohio where he was to have lunch at the Spread Eagle Tavern with several representatives from Gormac. Amongst the representatives to be present were the president of the company as well as its sales manager and contract administrator. The Gormac representatives arrived at the restaurant as scheduled and the group had lunch and discussed I various non-business related topics.
Pursuant to a prior arrangement between the parties, decedent was to accompany the Gormac representatives on a fishing excursion after lunch. It was decided that James Cunningham, the Gormac sales manager would ride with decedent while the other Gormac representatives would travel in a separate vehicle. While on their way to Leesville Lake in Carroll County, decedent placed a telephone call to appellee's purchasing manager to inform her of the events which had transpired in Kent that same morning. Ten minutes after the telephone call was completed, both decedent and Cunningham were killed when their vehicle collided head-on with a cement truck.
Having suffered the loss of her husband, Linda R. Chain ("appellant" herein), filed an application for death benefits on November 4, 1996 with the Ohio Bureau of Workers' Compensation. Said application was set for a hearing before a district hearing officer on January 16, 1997. It was the determination of the hearing officer that appellant's claim for death benefits should be allowed as the injuries leading to decedent's death were received within the course of, and arose out of, his employment.
The hearing officer reasoned that due to the nature of his employment, decedent's "place of employment" would be anywhere in which he happened to be conducting business. Furthermore, it was determined that appellee received a benefit from decedent's actions and as such the claim should be allowed.
Appellee filed an appeal from the district hearing officer's decision and the matter was set for a hearing before a staff hearing officer on February 27, 1997. At that time the staff hearing officer affirmed the prior decision thereby upholding appellant's claim for death benefits. The matter was again appealed by appellee and the Industrial Commission held a hearing on June 17, 1997. The Industrial Commission subsequently found that the totality of the circumstances supported a finding that appellant was entitled to death benefits. Therefore, the prior I decision was again affirmed. Appellee filed a timely notice of appeal from the Industrial Commission's decision with the Common Pleas Court of Carroll County on August 29, 1997.
Appellant responded to the notice of appeal by filing the requisite complaint on October 2, 1997. Subsequently, the parties exchanged discovery requests and disposed of pre-trial matters. Additionally, the parties agreed upon certain written stipulations of fact and admitted numerous depositions which had been conducted in response to civil litigation arising out of the September 18, 1996 accident. Based upon the available information, appellee filed a motion for summary judgment on July 22, 1998 contending that as a matter of law decedent's injuries were not received in the course of his employment and similarly did not arise out of his employment. Appellant responded with a cross-motion for summary judgment on July 27, 1998.
The trial court ruled on the parties' motions on September 22, 1998, finding that summary judgment was warranted in favor of appellee. In the court's opinion, the case law supported a finding that decedent was not within the course and scope of his employment and therefore, appellant was not entitled to death benefits through the Ohio Bureau of Workers' Compensation. In reversing the decision of the Industrial Commission, the trial court held that since decedent did not inform his employer of the fishing trip, did not obtain pre-approval as required by company policy, did not request personal or vacation leave for the time and since Gormac was paying for the excursion, decedent was not, as a matter of law, acting within the course of his employment. A timely appeal was filed from the trial court's decision on October 19, 1998.
 II. ASSIGNMENTS OF ERROR
Appellant raises two assignments of error on appeal. Due to their related nature, they will be addressed together herein. Appellant's first assignment of error reads:
 "THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, KOHLER COATING MACHINERY CORPORATION [APPELLEE] AND DENIED THE MOTION FOR SUMMARY JUDGMENT FILED BY LINDA R. CHAIN [APPELLANT]."
Appellant's second assignment of error reads:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT, KOHLER COATING MACHINERY CORPORATION [APPELLEE], WHEN QUESTIONS OF FACT EXISTED UPON WHICH REASONABLE MINDS COULD COME TO DIFFERENT CONCLUSIONS, FACTS WHICH SHOULD HAVE BEEN SUBMITTED TO A JURY FOR DETERMINATION."
Appellant contends that in granting summary judgment for appellee, the trial court incorrectly applied the law and misconstrued the facts of the case. Additionally, it is argued that the trial court placed undue weight on certain facts while ignoring other facts which if considered, would permit reasonable minds to come to different conclusions as to whether decedent's injuries were received in the course of and arose out of his employment. Particularly, appellant argues that the trial court failed to properly consider the peculiar nature of decedent's job as well as testimony regarding the business purpose of the meeting. Since it is believed that facts were before the court which could persuade reasonable minds to find in appellant's favor, it is argued that the trial court should have overruled appellee's motion and permitted the case to proceed to trial.
Appellee responds to appellant's position by asserting that it was entitled to summary judgment as there was no admissible evidence in the record to prove that decedent was within the course and scope of employment. Reliance is placed on the trial court's reasoning as to how decedent's activities were more consistent with a personal activity rather than a business meeting which would in any way benefit the company. It is further appellee's position that any testimony relied upon by appellant should be considered inadmissable hearsay which would not suffice to create a genuine issue of material fact.
 A. STANDARD OF REVIEW
In considering a motion for summary judgment, Civ.R. 56 (C) controls and provides that before such a motion may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of "the nonmoving party, that conclusion is adverse to the party against whom the motion is made. State ex rel.Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving. party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and; if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. In that a grant of summary judgment disposes of a case as a matter of law, this court's analysis on appeal is conducted under a de novo standard of review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105.
 B. APPLICABLE LAW
Pursuant to R.C. 4123.01 (C), in order to prove that a compensable injury occurred which resulted in the death of an employee, it must be established that the injury was "received in the course of, and arising out of, the injured employee's employment". The courts of Ohio on numerous occasions have discussed what must be demonstrated to illustrate that an injury in fact meets these requirements.
As to the first requirement that an injury occur in the course of employment, the Ohio Supreme Court has previously held that this prong relates to the time, place and circumstances of the injury. Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277. To be considered in the course of employment, an employee must be performing an obligation of his contract of employment.Industrial Comm. v. Davison (1928), 118 Ohio St. 180, 185-86. However, to be entitled to workers' compensation benefits, an employee need not necessarily be injured in the actual performance of work for his employer. Sebek v. Cleveland GraphiteBronze Co. (1947), 148 Ohio St. 693, 698. It is sufficient if the employee "is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." Id. The employee's activities giving rise to the injury must only be consistent with and logically related to his employer's business. Kohlmayer v.Keller (1970), 24 Ohio St.2d 10, 12. In order to preclude workers' compensation coverage, it must be shown that the employee was solely engaged in personal business, entirely disconnected from his employment. Industrial Comm. v. Ahern
(1928), 119 Ohio St. 41, 45.
In regards to the "arising out of" element, this portion of the test refers more to the causal connection between the employment and the injury. Fisher, supra at 277. To determine whether this element of the test has been met, a totality of the facts and circumstances approach is to be utilized. Id. Amongst the factors to be considered in this analysis are: (1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident. Id. at 278 citing Lord v.Daugherty (1981), 66 Ohio St.2d 441. Despite adopting these factors, the court went on to hold that a flexible, analytical approach to this type of case is preferred as workers' compensation cases are largely fact specific. Id. at 280. As such, it cannot be held that the Lord factors itemized in Fisher constitute an exhaustive list as "the totality-of-the-circumstances test [must] continue to evolve." Ruckman v. Cubby Drilling. Inc.
(1998), 81 Ohio St.3d 117, 122.
Due to the conjunctive nature of the wording in R.C. 4123.01
(C) both the "in the course of" and "arising out of" elements must be met prior to awarding compensation. Id. at 278. However, R.C. 4123.95 recognizes that R.C. 4123.01 through 4123.94 must be construed liberally in favor of employees. Therefore, in applying the above noted test, the requirements must be "liberally construed in favor of awarding benefits." Id. These principles recently have been reaffirmed by the Ohio Supreme Court inRuckman, supra.
 C. ANALYSIS
In reviewing the evidence before the trial court and construing it in favor of appellant as required, this court concludes that reasonable minds could reach different conclusions as to whether decedent's injuries occurred in the course of, and arose out of, his employment with appellee. As such, the trial court erred in granting summary judgment thereby precluding this matter from proceeding to a jury trial.
As to the "in the course of" requirement, as previously discussed it need only be shown that the employee was engaged in a pursuit which in some logical manner pertained to or was incidental to his employment. Ruckman and Sebek, supra. In order to avoid workers' compensation coverage, it would need to be shown that decedent's activities were entirely disconnected from his employment. Ahern, supra. While appellee takes issue with much of the evidence relied upon by appellant in her argument in support of benefits, our review of the record finds ample evidence which when construed in favor of appellant would preclude summary judgment.
It is undisputed that while decedent normally worked an 8:00 a.m. to 5:00 p.m. shift, he was in charge of establishing his own schedule for that time period. Although he technically had a supervisor, this individual normally played no role in dictating what decedent would do on any given day or where he would travel. Additionally, once decedent decided what tasks he was to perform, he did not have an obligation to inform his supervisor of such. There was no standard operating procedure in place as to how decedent would conduct his daily activities. Therefore, while it may be true that appellee had no vendors in Carroll County where the accident occurred, it can be viewed as within decedent's discretion to conduct business related activities in this area. So long as his conduct was incidental to his employment, workers' compensation coverage will apply. Appellee's statement that meetings with vendors "normally" took place at the manufacturing facility further supports the conclusion that occasions would arise where business would be conducted at different locations under varying circumstances.
Appellee seeks to counter this position by providing testimony from Gormac employees that no business was discussed during the lunch in Hanoverton and that the fishing excursion was established in order to thank decedent for his past business. Based upon these assertions, appellee attempts to paint the events of September 18, 1996 as solely personal in nature.
In review of the record however, an abundance of evidence is present which could be construed to suggest that decedent's activities pertained to and were consistent with his employment. For instance, Gormac's contract administrator indicated in deposition testimony that he was present on September 18, 1996 as Gormac was involved in ongoing negotiations with appellee regarding the mini spangle rig project. It was his responsibility to coordinate and schedule projects as they were received by Gormac. Furthermore, this individual stated that documents had been taken along on September 18, 1996 regarding the project. Such statements when construed in favor of appellant would support a conclusion that decedent was planning on conducting business at some point during the afternoon.
Gormac's president confirmed that on the date of decedent's death ongoing business discussions were occurring between Gormac and appellee regarding the placement of the mini spangle rig project. Had decedent not been killed prior to the fishing excursion, Gormac's president confirmed that discussions may have taken place regarding this project which may have inured a benefit to appellee. The company's president provided further testimony via deposition that during the morning hours of September 18, 1996, the company's estimator had prepared a more specific estimate and a summary relating to the mini spangle rig project for which appellee was still seeking a vendor. According to Gormac's normal operating procedure, this information would then be given to the company's sales manager, James Cunningham. Gormac's estimator corroborated this testimony when he stated in his deposition that the estimate and summary had been drawn up and given to Cunningham the morning of September 18, 1996. The company's estimator further indicated that this had been done as Gormac representatives were meeting with decedent that afternoon on a fishing excursion.
Appellee's purchasing manager and assistant manufacturing coordinator provided further deposition testimony which when construed in appellant's favor supports a conclusion that decedent was involved in activities incidental to appellee's business. Both individuals confirmed that at the morning meeting on September 18, 1996, decedent discussed the mini spangle rig project. Furthermore, appellee's purchasing manager indicated her awareness that decedent was meeting with Gormac representatives that afternoon and was taking drawings of the project with him. The purchasing manager also confirmed that decedent had called her at approximately 1:10 P.M. on September 18 to discuss another one of appellee's projects.
Construing all of this testimony in favor of appellant, reasonable minds could conclude that decedent was engaged in activities which were incidental to or logically related to appellee's business. The fact that decedent was killed prior to commencing discussions regarding the project does not alter the character of the events of September 18, 1996. Therefore, appellant has met the first element of the test established in Fisher for summary judgment purposes.
Our analysis must now turn to the second element, that being whether the injury arose out of the employment relationship. As to the first factor under Lord, that being the proximity of the scene of the accident to the place of employment, this is for the most part inapplicable to the case at bar as decedent was a non-fixed situs employee. As such, decedent's place of employment was in reality not appellee's business premises but rather anywhere that decedent may have chosen to conduct business activities. Analyzing the facts in light of this factor does not assist in arriving at a conclusion on the "arising out of" portion of the test. Similarly inapplicable in this case is the second factor under Lord, the degree of control the employer had over the scene of the accident. In essence, appellee waived any direct control over where decedent conducted business activities as he was a non-fixed situs employee. If courts were forced to rigidly apply the I first and second factors of Lord under all circumstances, non-fixed situs employees would for the most part be precluded from meeting the second portion of the test. Such gives credence to the determination that a flexible, analytical approach be applied due to the fact specific nature of workers' compensation cases.
As to the final factor under Lord, this court's analysis above relating to how decedent's activities were incidental to his employment similarly applies here. When the evidence is construed in favor of appellant, reasonable minds could conclude that decedent was conducting business related activities at the time of his death. It necessarily follows that the performance of these activities would be beneficial to appellee. Thus, a connection can be drawn between decedent's fatal injury and his employment. The existence of a benefit to appellee in conjunction with the non-fixed situs nature of decedent's employment is sufficient to meet the second element of the test thereby precluding summary judgment on appellee's behalf.
Based upon the foregoing, it must be held that a genuine issue of material fact existed as to whether decedent's injuries were received in the course of, and arose out of, his employment with appellee. While the parties may have agreed to certain stipulations of fact prior to filing the motions for summary judgment, this court may nevertheless hold that a genuine issue of material fact remains. This is particularly the case when "the presence of competing reasonable inferences from undisputed facts presents a genuine issue of material fact whose resolution should be left to the trier of fact." Hampton v. Trimble (1995),101 Ohio App.3d 282, 287 quoting Duke v. Sanymetal Products Co.,Inc. (1972), 31 Ohio App.2d 78, 81.
In light of the totality of the circumstances, the standard for granting summary judgment and the policy espoused in R.C.4123.95, it must be held that the trial court erred in granting summary judgment.
For the foregoing reasons, the decision of the trial court is reversed and this cause is remanded for further proceedings according to law and consistent with this court's opinion.
Donofrio, J., concurs.
Waite, J., concurs.
APPROVED:
 ______________________________ JOSEPH J. VUKIVICH, JUDGE