JOURNAL ENTRY AND OPINION
{¶ 1} In 2001, Monica Leon was employed as a nurse at the Cleveland Clinic Foundation (the "Clinic"). On December 1, 2001, her husband, Ricardo Leon, fatally shot her in the lobby of the Clinic. Lewis Foster, as administrator of Monica's estate, sought worker's compensation for her death on behalf of her dependent children, which defendant-appellant, the Industrial Commission of Ohio, disallowed.
 {¶ 2} After the Commission refused his appeal, Foster filed a notice of appeal and complaint in the Common Pleas Court pursuant to R.C. 4123.512. Foster and defendants-appellants, the Clinic and the Administrator of the Bureau of Workers' Compensation, filed cross-motions for summary judgment. The trial court subsequently granted Foster's summary judgment motion, ruling that Monica's fatal injury was sustained in the course of and arose out of her employment at the Clinic, and, therefore, was compensable under R.C. Chapter 4123.
 {¶ 3} The Clinic and Administrator have now appealed the trial court's ruling, asserting that the trial court erred in granting Foster's summary judgment motion.
 STANDARD OF REVIEW {¶ 4} Appellate review of a trial court's decision on a motion for summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue of fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come only to a conclusion that is adverse to that party. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327.
 DOCUMENTS SUPPORTING CIV.R. 56 MOTION {¶ 5} As an initial matter, we address Foster's argument that the trial court erred in considering the documents attached to the Clinic's motion for summary judgment. Attached to the Clinic's motion for summary judgment were uncertified copies of (1) the orders of the Industrial Commission denying Foster's application for workers' compensation and his appeal of that denial; (2) the Clinic's internal investigation of the events surrounding the shooting of Monica Leon, including witness statements; and (3) the transcript of the criminal proceeding in Case No. CR-417335 against Ricardo Leon. None of the documents were authenticated by affidavit.
 {¶ 6} Civ.R. 56(C) sets forth the type of documents that may be used to support a motion for summary judgment. The rule provides in part:
 {¶ 7} "* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"
 {¶ 8} To introduce a document other than that listed in Civ.R. 56(C), a party must accompany the document with an affidavit that attests to its authenticity. Biskupich v. WestbayManor Nursing Home (1986), 33 Ohio App.3d 220, 222. Although the record indicates that the documentary evidence submitted by the Clinic was not properly authenticated by affidavit, Foster failed to move to strike this evidence or to otherwise object. Failure to move to strike or otherwise object to documentary evidence submitted by a party in support of, or in opposition to, a motion for summary judgment waives any error in considering that evidence under Civ.R. 56(C). Stegawski v. Cleveland AnesthesiaGroup, Inc. (1987), 37 Ohio App.3d 78, 83. Accordingly, the court in its discretion could review this documentary evidence, and Foster has waived any error committed by the court in considering the Clinic's exhibits.
 COMPENSABLE OR NONCOMPENSABLE INJURY {¶ 9} Pursuant to R.C. 4123.01(C), an employee is entitled to worker's compensation benefits for an injury received in the course of, and arising out of, his or her employment. "In the course of and arising out of" are conjunctive requirements that must both be met before an injury is compensable. Fisher v.Mayfield (1990), 49 Ohio St.3d 275, 277. In accordance with R.C.4123.95, this phrase is to be liberally construed in favor of the employee. Id. at 278.
 {¶ 10} When determining whether an injury occurred in the course of employment, courts consider the time, place and circumstances of the injury. See, e.g., Fisher, supra, at 277. "An injury is received `in the course of employment' `if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.'" Coleman v. APCOA, Inc.
(Sept. 28, 1999), Franklin App. No. 99AP-60, quoting Ruckman v.Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117, 120.
 {¶ 11} An injury arises out of the employment when a sufficient causal connection exists between the injury and the employment. Lord v. Daugherty (1981), 66 Ohio St.2d 441, 444. Whether a sufficient causal connection exists depends on the totality of the facts and circumstances surrounding the injury. Id.
 {¶ 12} The Ohio Supreme Court has set forth three factors generally considered when determining the existence of a causal connection between the injury and the employment: 1) the proximity of the scene of the accident to the place of employment; 2) the degree of control the employer had over the scene of the accident; and 3) the benefit the employer received from the injured employee's presence at the scene of the accident. Lord, 66 Ohio St.2d 441, syllabus. The Ohio Supreme Court has also recognized, however, that because workers' compensation cases are very fact specific, "no one test or analysis can be said to apply to each and every factual possibility." Fisher, 49 Ohio St.3d 275, 280. Thus, "historically, similar fact patterns have promulgated their own set of rules." Id.
 {¶ 13} One such fact pattern involves fights and assaults that occur at the workplace. In workers' compensation cases concerning fights and assaults during work hours at the place of employment, Ohio courts have consistently focused on two factors: (1) if the origin of the assault was work-related; and (2) if the claimant was not the instigator. Coleman, supra. The injury is compensable only if both findings are made. Shamberger v. NHVPhysicians Professional Corp. (Aug. 20, 2003), Summit App. No. 21416, citing Coleman, supra; Williams v. Indus. Comm.
(1939), 63 Ohio App. 66. See, also, Delassandro v. Indus Comm.
(1924), 110 Ohio St. 506; Indus. Comm. v. Pora (1919),100 Ohio St. 218; Harvey v. Mayfield (Aug. 20, 1990), Richland App. No. CA-2743.
 {¶ 14} Here, it is apparent that the origin of the assault on Monica Leon was not workrelated. The transcript of the criminal proceeding against Ricardo Leon, attached to the Clinic's motion for summary judgment, reveal the following facts. On November 30, 2001, Monica Leon, and her two children with Lewis Foster, Leon's ex-husband, spent the night at Foster's home. Monica was having marital problems with Ricardo, her current husband, that had in the past led to violent outbursts by Ricardo. He was distraught over what he perceived to be attempts by Foster to reconcile with Monica. Neither Foster nor Ricardo were employees of the Clinic.
 {¶ 15} On the morning of December 1, 2001, Foster drove Monica to the Clinic to report for work. After arriving at the Clinic, Foster and Monica sat in his car, talking, for about 15 minutes. Shortly before 7 a.m., Monica got out of Foster's car to enter the Clinic. Foster heard a "little pop" and then saw Ricardo standing between Monica and Foster's car. Ricardo shook his head several times at Foster and then began shooting into Foster's car, hitting him in the right arm. After firing on Foster, Ricardo followed Monica into the lobby of the Clinic, where he confronted her and then shot her in the head. She died at the Clinic later that morning.
 {¶ 16} Construing this evidence in a light most favorable to Foster, reasonable minds could only conclude that Monica's fatal injury arose out of a personal dispute between her and Ricardo that was unrelated to her employment with the Clinic. There is simply no evidence to remotely suggest that Ricardo's fatal shooting of Monica originated out of, was related in any way to, or was exacerbated by, her employment at the Clinic. The quarrel was nothing more than a domestic dispute brought to fruition in the employment setting. Indeed, Ricardo admitted that the shooting was a personal matter between him and Monica when, in explaining why he shot Monica, he told the arresting officers that "[w]hen he saw his wife with her ex-husband in the car, he [just] lost it." Further, he said that "he was tired of his wife's ex-husband taunting him and upset with her plans on divorcing him."
 {¶ 17} Ohio courts have repeatedly recognized that:
 {¶ 18} "Where the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test. * * * When it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held noncompensable." 1-8 Larson's Workers' Compensation Law (2003), Sections 8.02(1)(a) and 8.02(1)(c).
 {¶ 19} In Davis v. Indus. Commission (1957), 76 Ohio L. Abs. 474, 148 N.E.2d 100, for example, the Tenth District Court of Appeals affirmed the judgment of the trial court holding that the claimant's decedent was not entitled to participate in the workers' compensation fund. In Davis, the claimant was a salesman for a brewing company. At the end of each day, he would return to the company and complete a report regarding the day's activities. One day, as he was making out his report, another employee taunted him about his sales abilities and a fight ensued. The claimant's decedent was fatally injured in the fight.
 {¶ 20} The appellate court held that the injury was not compensable because "the argument arose out of a matter which was completely foreign to the work in which Collins was then engaged, to wit, in the making of his report for the day's business. This work was voluntarily abandoned when he became engaged in the `fight' which it appears was a private affair. One who is injured while engaged in one's private affairs is not permitted to participate in the workmen's compensation fund. * * * No recovery can be had for injury sustained in a fight which was entered into independently of any duty of the employment. * * * The evidence indicates that the cause of the `fight' was personal animosity between [the decedent] and [his assailant] entirely unrelated to the performance of any contractual duty." Id.
 {¶ 21} Similarly, in Williams v. Ind. Comm. of Ohio (1939),63 Ohio App. 66, the Sixth Appellate District Court of Appeals held that the death of an employee, which resulted from a fisticuff match with another employee that started in fun but ended in earnest, "was entirely outside of and disconnected from the business in which the [claimant's decedent] was employed" and, therefore, not compensable under the workers' compensation statute.
 {¶ 22} Likewise, in Harvey v. Mayfield (1990), Richland App. No. CA-2743, the Fifth Appellate District Court of Appeals held that a fight between two employees was a personal matter between the employees, unrelated to any employment duties, and thus was not compensable. In Harvey, an employee named McClain was irritated that someone had put oil on the front tire and shocks of his motorcyle, which was parked in the company parking lot. When he asked fellow employee Thompson about the oil, Thompson shoved him. McClain grabbed a caulking gun and struck Thompson with a blow of such force that Thompson eventually died. Thompson's minor daughter filed for death benefits. The court found Thompson's fatal injury noncompensable, however, because the injury was "independent of and disconnected with his employment." Id. The court found that "the injury must be sustained in the performance of some duty required by the employer. * * * [R]easonable minds could not conclude other than that the injury resulted from nonduty behavior instigated and engaged in by the injured employee." Id.
 {¶ 23} We find Monica Leon's fatal injury similarly noncompensable. It is apparent that the shooting that morning arose strictly out of the marital discord between Ricardo and Monica, unrelated to any job responsibilities that Monica had at the Clinic. Monica's injury was "independent of and disconnected with" employment and, therefore, is noncompensable.
 {¶ 24} Foster argues, however, that Ricardo's presence at the Clinic that morning was related to Monica's employment as a nurse because he wanted her to change the dressing on a bandage on his hand. Thus, Foster contends, Ricardo was there "for a medical purpose to receive medical care which was the business of the Clinic" and, therefore, the origin of the assault was work related. We disagree.
 {¶ 25} First, we note that Foster raises this argument for the first time on appeal. It is wellestablished that a party cannot assert new legal theories for the first time on appeal.Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43. Moreover, even if we were to consider Foster's argument, Foster has produced no evidence that Ricardo had an appointment at the Clinic that morning for any medical treatment or even that changing a dressing on his bandage would have fallen within Monica's job responsibilities. Rather, changing a dressing on a bandage is something a husband would ask of his wife, regardless of whether she is a nurse or where she works.
 {¶ 26} Foster also argues that Monica's fatal injury arose out of her employment because she was at the Clinic, reporting for work, when she was shot. He contends that "but for" her employment, she would not have been at the Clinic and "would not have been shot and fatally injured on the morning of December 1, 2001." This court addressed a similar argument in John O. HollyLodge v. Knox (Aug. 29, 1991), Cuyahoga App. No. 58999, however, and found it unpersuasive. In Holly Lodge, the decedent was walking a co-worker to her car at the end of his shift when he was shot in a random drive-by shooting. We held that the decedent's injury was noncompensable, even assuming that he would not have been in the parking lot "but for" his employment, because "no evidence was presented which showed that a causal connection existed between his injury and the activities, conditions and environment of his employment." Id., citing MTDProducts, Inc. v. Robatin (1991), 61 Ohio St.3d 66.
 {¶ 27} Likewise, in this case, Foster has failed to present any evidence to demonstrate a causal connection between Monica's injury and her employment. Rather, the evidence reflects that although the fatal shooting occurred in close proximity to Monica's workplace, it did not occur during working hours, as she had not yet started her shift when the shooting occurred. Moreover, she was not performing her work duties when the shooting occurred, nor was she reporting for duty, as Foster contends. Instead, the evidence demonstrates that Monica was fleeing her assailant when she entered the lobby of the Clinic; she was not in or near her normal work area when the shooting occurred. Finally, the evidence demonstrates that the argument between Monica and Ricardo was not related to any of her work duties; it was a personal dispute exacerbated by Monica's ongoing offduty relationship with her ex-husband.
 {¶ 28} Lastly, Foster argues that as a public policy matter, victims of domestic violence that occurs in the workplace should receive compensation under the workers' compensation statute. We are not persuaded. Although domestic violence is an unfortunate occurrence in our society, "the purpose of the Worker's Compensation Act is not to make an employer an absolute insurer of the employee's safety, but only to protect the employee against risks and hazards incident to the performance of his work." Phelps v. Positive Action Tool Co. (1986),26 Ohio St.3d 142, 144. Monica Leon's fatal injury, although tragic, was not work-related, even though it occurred on her employer's premises. Accordingly, it is not compensable under the workers' compensation statute.
Judgment reversed.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellants recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. concurs.
Gallagher, J., concurs in judgment only.
*Sitting by assignment: Judge James D. Sweeney, Retired, of the Eighth District Court of Appeals.