DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, William Burkey, appeals from the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of Appellee denying his children death benefits under the workers' compensation scheme. This Court reverses.
 I. {¶ 2} Appellant brought suit on behalf of his three minor children following the death of his wife and their mother, Wendy Burkey ("Wendy"). In the early morning hours of May 26, 2001, Wendy was murdered in the parking lot of her employer. Appellee, Elyria Maintenance Company, employed Wendy at the time of the murder. To date, this murder remains unsolved.
 {¶ 3} On March 27, 2003, Appellant filed a workers' compensation claim for death benefits on behalf of the couple's three minor children. The Bureau of Workers' Compensation ("Bureau") denied the claim at each administrative level. The Bureau's denial was premised upon the finding that Wendy's death was not in the course of and arising out of her employment with Appellee. As such, on November 20, 2003, Appellant appealed the denial of the right to participate in the fund to the Lorain County Court of Common Pleas. Prior to trial, both sides filed motions for summary judgment.
 {¶ 4} Ultimately, the trial court granted Appellee's motion for summary judgment without providing supporting rationale. Appellant timely appealed that decision, raising three assignments of error. As each of these assignments of error asserts that the trial court erred in granting summary judgment, they will be addressed together.
 II. ASSIGNMENT OF ERROR I
"The trial court erred in holding that a murder occurring on company premises following an employee's scheduled work shift is outside the `zone of employment' doctrine of Marlow v. Goodyear Tire and Rubber Company[.]"
 ASSIGNMENT OF ERROR II
"The trial court erred in holding that the death of Wendy Burkey, whose job duties included returning a company van and clocking out at the close of her shift, falls outside the causal test of Lord v. Daugherty[.]"
 ASSIGNMENT OF ERROR III
"The trial court erred in holding that the totality of the circumstances of the present case do not merit recovery under Ohio's Liberal Workmens' Compensation Statute[.]"
 {¶ 5} In his three assignments of error, Appellant asserts that the trial court erred in finding that his children were not entitled to death benefits under the workers' compensation scheme. This Court agrees.
 {¶ 6} This Court reviews an award of summary judgment de novo. Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948,107 S.Ct. 433, 93 L.Ed.2d 383.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
 {¶ 9} In support of its motion for summary judgment, Appellee utilized the affidavit of its President, David Wagner, the coroner's report regarding Wendy, and Appellant's responses to interrogatories. In opposition, Appellant relied upon Appellee's evidentiary materials and simply argued that a genuine issue of material fact existed. This Court agrees with Appellant's contention that a genuine issue of material facts exists.
 {¶ 10} R.C. 4123.01(C) defines injury for the purpose of workers' compensation as follows:
"`Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."
Therefore, the sole issue before this Court is whether Appellant's injury occurred in the course of and arising out of her employment such that she would be allowed to participate in the Workers' Compensation Fund pursuant to R.C. Chapter 4123. In order to be entitled to benefits, an employee, or her qualifying dependents, must demonstrate both the "in the course of" prong and the "arising out of" prong of R.C. 4123.01(C).Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277. In accord with R.C.4123.95, this phrase is to be liberally construed in favor of the employee. Id. at 278.
 {¶ 11} When determining whether an injury occurred in the course of employment, this Court considers the time, place, and circumstances of the injury. Id. at 277. As such, an injury is received in the course of employment, "if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business." Ruckman v. CubbyDrilling, Inc. (1998), 81 Ohio St.3d 117, 120.
 {¶ 12} Additionally, an injury arises out of employment when there exists a sufficient causal connection between the injury and the employment. Lord v. Daugherty (1981), 66 Ohio St.2d 441, 444. In determining whether this causal connection exists, we examine the totality of the circumstances and facts surrounding the injury. Id. The risks that lead to these injuries can be placed into three categories: "risks distinctly associated with the employment, risks personal to the claimant, and `neutral' risks — i.e., risks having no particular employment or personal character." Waller v. Mayfield (1988),37 Ohio St.3d 118, 122, quoting 1 Larson, The Law of Workmen's Compensation (1985) 3-12, Section 7.00. While injuries stemming from risks associated with employment are compensable, injuries resulting from a personal risk are "universally noncompensable." Waller,37 Ohio St.3d at 122.
 {¶ 13} The Ohio Supreme Court has set forth three factors that should be considered in determining whether this causal connection exists between the injury and the employment: 1) the proximity of the scene of the accident to the place of employment; 2) the degree of control the employer had over the scene of the accident; and 3) the benefit the employer received from the injured employee's presence at the scene of the accident. Lord, 66 Ohio St.2d at syllabus. Therefore, in making a determination, a reviewing court "must examine the separate and distinct facts of each case." Fisher, 49 Ohio St.3d at 280.
 {¶ 14} We begin by noting that the parties dispute whether Appellant has demonstrated that the injury occurred within the zone of employment. However, this Court finds that the zone of employment line of cases is inapplicable to the matter at hand. The zone of employment test serves as an exception to the coming-and-going rule which operates to eliminate participation in the Workers' Compensation Fund. See Ruckman,81 Ohio St.3d at 123. Here, it is undisputed that Appellant had not yet left the premises of her employer at the time the injury was inflicted. While she had filled out a time card for that evening, we find such a fact insufficient to invoke the coming-and-going rule. Wendy was required to park in a lot owned by her employer, Appellee. At the close of her shift, she was required to return a company-owned van to that parking lot, and then go forth to a different portion of that lot to retrieve her own vehicle. Given that Wendy never made it out of the parking lot, this Court cannot say that Appellant must invoke an exception to the coming-and-going rule in order to establish a compensable injury.
"When deciding cases involving assaults and fights during work hours at the place of employment, Ohio courts have consistently focused on two factors: (1) whether the origin of the incident was work-related, and (2) whether the claimant was the instigator. Courts have found an injury compensable when the origin was found to be work-related and the claimant did not instigate the assault." Coleman v. APCOA, Inc. (Sept. 28, 1999), 10th Dist. No. 99AP-60.
With that in mind, we turn to the totality of the circumstances surrounding Wendy's death. There is no question that Wendy's injury occurred in close proximity to her place of employment. She was murdered on property owned, controlled, and maintained by Appellee. Further, Appellee had exclusive control over the area where the murder occurred. Appellee fenced in the parking lot, using an eight-foot fence topped with barbed wire. The gate to the parking lot was padlocked, and only employees of Appellee were able to open the lock.
 {¶ 15} Finally, this Court must examine the benefit that Appellee was receiving from Wendy at the time of the murder. Appellee has asserted that Wendy chose to remain in the parking lot for an hour following her shift, and as such, it was no longer receiving any benefit from her. However, such a claim is factually unsupported. The coroner placed Wendy's time of death at approximately 1:30 A.M. Utilizing Wendy's hand-written account of her number of hours worked, Appellee placed the end of her shift at 12:30 A.M. We note that Wendy did not actually clock out at the end of her shift. She simply indicated that had worked for seven and one-half hours on the day in question after clocking in at 4:57 P.M. Appellee presented no evidence in its motion for summary judgment regarding the time of Wendy's attack. The official cause of Wendy's death was listed as exsanguination. No evidence was placed before the trial court to indicate that Wendy's death was immediate. Further, no evidence was placed in the record to demonstrate when Wendy was first attacked. Rather, Appellee speculated that Wendy waited around in the parking lot for one hour after her shift, was then attacked, and died immediately. This speculation has no basis in the evidence put before the trial court. In addition, at the end of her shift, Wendy was obligated to be in the parking lot because she was required to return the company van she uses during her shift. The return of the company van, which placed Wendy in the parking lot where her murder occurred, certainly provided a benefit to her employer.
 {¶ 16} Appellee has further argued that Wendy's death was the result of a personal attack and is not ompensable per Waller. Wendy's murder remains unsolved. To label her murder the result of turmoil in her personal life is nothing more than rampant speculation. Appellee relies upon circumstantial evidence to demonstrate that Wendy's murder must have been personal. Appellee notes that Wendy was not robbed and that the scene of the crime indicates that someone waited for Wendy to return. However, these facts are no more an indication of a crime of a personal nature than they are of a crime of random violence. Further, by Appellee's own admission, only employees of the company could open the padlock to the parking lot. Thus, circumstantial evidence also exists that would demonstrate that Wendy's murder was work related. Thus, a trial court could not properly conclude that no genuine issue of material fact exists as to whether Wendy's death was work related. See Coleman, supra.
 {¶ 17} Appellee's additional reliance on Foster v. Cleveland ClinicFoundation, 8th Dist. Nos. 84156 84169, 2004-Ohio-6863 is misplaced. In Foster, the decedent was murdered by her ex-husband. As such, the murder was clearly a personal act. Here, there is simply no evidence that demonstrates that Wendy's murder was personal. As such, a question of fact remains as to whether Wendy's dependents are entitled to death benefits. Accordingly, Appellant's assignments of error are sustained.
 III. {¶ 18} Appellant's assignments of error are sustained, and the judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed. and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellees.
Exceptions.
Carr, P.J., Batchelder, J., Concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)