JOURNAL ENTRY AND OPINION
This is an appeal of the trial court granting a Joint Motion for Summary Judgment by appellees, the City of Cleveland (City) and the Bureau of Workers' Compensation's (Bureau). Plaintiff-appellant, David Smith (Smith), deceased, claims that the trial judge erred in determining that Smith was not acting within the scope of his employment as a City of Cleveland police officer when he was fatally shot outside a Cleveland night club. Smith simultaneously assigns as error the trial court's denial of death benefits to his surviving children. We agree with appellant and reverse.
The undisputed facts are as follows.[1] Sometime between midnight and 12:30 a.m. on April 15, 1998, Smith and a friend, Eddie Wright, arrived at the Office Lounge, a gentlemen's club in which Bridget Jackson, Smith's girlfriend, was working as a dancer. Smith, off-duty, was wearing street clothes and carrying his police issue service revolver. Already inside the club were patrons Maurice Mackey and his girlfriend, Stephanie Whitmore.
After entering the club, Smith and Wright sat at a table and were joined by Jackson. Mackey and Whitmore were seated at a table some distance away, but within sight of Smith and his friends. Shortly after being seated, Smith and Wright began consuming
Whitmore walked over to Smith's table and asked Jackson to perform a lap dance for Mackey. Jackson refused, and Whitmore returned to the table where Mackey was seated. An exchange of evil looks ensued between the two tables, with the evidence unclear as to who initiated the stare-down.
Wright, who had also exchanged looks with Mackey, decided he wanted to leave in order to avoid a confrontation. At no point did Smith, Wright, and Mackey speak to one another, nor was there any physical contact between them. Just after 1:00 a.m., but before Smith and Wright left, Mackey and Whitmore exited the club.
At Mackey's criminal trial,[2] Wright testified that shortly after Mackey and Whitmore left, he and Smith exited from the club's front door and noticed Mackey and Whitmore standing approximately ten to fifteen feet away from the club's entrance. The precise nature of what transpired next between Smith and Mackey is in dispute. Wright recalls that Mackey asked them, do you all have a problem with me? Smith responded by placing his left hand to his ear and replying huh? Wright then states, . . . the defendant [Mackey] went in his, like waistband area, and pulled out a firearm. Pointing at Smith and Wright, Mackey shot twice. On direct examination, Wright testified that Mackey shot first and that prior to hearing the shots fired by Mackey he did not see Smith draw his weapon.
Whitmore also testified at Mackey's trial, and her testimony is in direct conflict with Wright's. At the trial, Whitmore seemed certain that it was Smith who first drew his gun, not Mackey. Whitmore stated:
Q. And now your back is to Maurice, is that correct?
A. Yes, sir.
Q. And did you say anything to these two gentlemen then?
A. I said, Why are you bothering us?
Q. Okay. Did they respond at all?
A. The next thing I seen was him pulling a gun out.
* * *
 Q. I mean, he goes for his gun, he gets it out and is pointing basically in your direction?
A. Yes, sir.
Q. And it's pointing at your stomach, is that correct?
A. Yes.
 Q. Okay. And at this point in time is when you hear the shots fired behind you, is that correct?
A. Correct.
 Q. And you hear two shots being fired behind you, is that correct?
A. Yes.
Mackey's first shot hit Smith in the chest, while the second bullet struck and injured Wright. Smith died from the gunshot wound. Eyewitness testimony from the club's bartender confirmed that Smith's revolver was found in his hand at the scene. An autopsy revealed that Smith was legally intoxicated at the time of his death.
Following Smith's death, his surviving children applied for death benefits from the Bureau. The application was ultimately denied by the Bureau, which determined that Smith's death was not compensable because he was not acting within the scope of his employment as a police officer when he was killed.
Pursuant to R.C. 4123.512, Smith filed an administrative appeal in the trial court. All parties filed motions for summary judgment. The court granted the City and the Bureau's joint motion on November 2, 2000. Smith filed this appeal on November 24, 2000. In his sole assignment of error, Smith claims that the trial court erred in granting the joint motion for summary judgment filed by the City and the Bureau and in determining that Smith was not within the scope of his employment the night that he was fatally shot by Mackey.
Before we proceed with an analysis of the facts and law in the case at bar, we will first address Smith's argument that this case is determined by the September 30, 1998 amendments to or the prior form of R.C. 4123.01, specifically the definition of employee.
The earlier definition is as follows:
A)(1) Employee means:
 (a) Every person in the service of the state, or of any county, municipal corporation, township, or school district therein, including regular members of lawfully constituted police and fire departments of municipal corporations and townships, whether paid or volunteer, and wherever serving within the state or on temporary assignment outside thereof, and executive officers of boards of education, under any appointment or contract of hire, express or implied, oral or written, including any elected official of the state, or of any county, municipal corporation, or township, or members of boards of education:
* * *
The revision effective March 12, 2001, added the following:
 As used in division (A)(1)(a) of this section, the term regular members of lawfully constituted police and fire departments includes the following persons when the person responds to an inherently dangerous situation that calls for an immediate response on the part of the person, regardless of whether the person is within the limits of the jurisdiction of the person's regular employment or voluntary service when responding, on the condition that the person responds to the situation as the person otherwise would if the person were on duty in the person's jurisdiction.
The amendment specifically provides compensation for off-duty peace officers, who respond like a police officer to an inherently dangerous situation even outside their jurisdiction.
Off-duty police officers, however, had already been covered under the definition of injury, which definition was not amended:
 (C) Injury includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.
Case law had expanded a police officer's employment to include off-duty hours, because police officers have an additional responsibility that goes beyond their working hours. Historically, officers have been required to carry guns when off duty and to intervene as a police officer, even if off duty, when police intervention is needed. The amendment, therefore, merely codified what the courts had already included. However, the amendment did provide some specific language: (1) the situation was inherently dangerous, (2) what was needed was an immediate response, and the officer acted the same as if on duty. Moreover, the amendment clarified that the service could be regular employment or voluntary service and the person could be acting outside his jurisdiction.
The specific language of the amendment would not help resolve the issue in the case at bar. There is no question the officer was within his jurisdiction and was regularly employed as a police officer. Moreover, there can be no doubt that the situation was inherently dangerous and an immediate response was called for. The question that remains, under the amendment, is whether he responded the same as he would as if on duty. This question is really the same under the older definition of injury: whether it arose from his employment as a police officer.[3]
The argument, therefore, about the amendments to R.C. 4123.01 et seq. has no bearing on Smith's agreed-upon status as an employee included under the statute in this appeal. Moreover, the case law explaining how an injury might arise from one's employment even when an officer is off-duty is still relevant insofar as it is consistent with the new provision, e.g., on jurisdiction and voluntary service. We now turn to the merits of appellants' assignment of error.
Rule 56(C) of the Ohio Rules of Civil Procedure provides that summary judgment is proper only if the trial court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, when such evidence is viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. Under the Rule and the controlling case law of this state, the moving party must support the motion with affirmative evidence in order to meet its burden of proving that no genuine issue of material fact exists for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, 510 N.E.2d 1108.
Keeping in mind that the burden of proving a viable claim for workers' compensation benefits always remains with the claimant, we review the order granting summary judgment de novo. Youghiogheny Ohio Coal Co. v. Mayfield, Admr., et al. (1984), 11 Ohio St.3d 70, 464 N.E.2d 133, citing Zuljevic v. Midland-Ross (1980), 62 Ohio St.2d 116; Swift and Co. v. Wreede (1959), 110 Ohio App. 252. Summary judgment should not be granted where the facts are subject to reasonable dispute. The improper grant of summary judgment precludes a jury's consideration of a case, and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion. Shaw v. Central Oil Asphalt Corp. (1981), 5 Ohio App.3d 42,44, 449 N.E.2d 3.
In order to receive benefits from the Bureau, a claimant, such as Smith here, must prove, by a preponderance of the evidence, that: (1) his injury arose out of the course and scope of his employment and (2) a direct and proximate causal relationship exists between the injury and the employment. R.C. 4123.01(C); Fisher v. Mayfield (1990),49 Ohio St.3d 275, 551 N.E.2d 1271.
In Fisher, the court noted that the statutory language in the course of relates to the time, place, and circumstances of the injury whereas the arising out of element anticipates a causal connection between the injury and the employment. Id. at 277, 278. Whether or not the causal connection is sufficiently established depends upon the totality of facts and circumstances surrounding the events in question. Fisher enumerates factors to consider: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene.
Appellees interpret Fisher's enumeration of the three factors to be exhaustive. The Ohio Supreme Court has twice cautioned, first, in Lord v. Daugherty (1981), 66 Ohio St.2d 441, 423 N.E.2d 96, and then in Fisher, however, that none of the above-cited factors is meant to be exclusive, nor do they establish a bright-line test to be mechanically applied in evaluating the facts of a case. Fisher, supra. The court in Fisher explained:
 [W]hen applying the analysis set forth above, a reviewing court must examine the separate and distinct facts of each case. Historically, similar fact patterns have promulgated their own set of rules * * *. This is because workers' compensation cases are, to a large extent, very fact specific. As such, no one test or analysis can be said to apply to each and every factual possibility. Nor can only one factor be considered controlling. Rather, a flexible and analytically sound approach to these cases is preferable. Otherwise, the application of hard and fast rules can lead to unsound and unfair results.
Fisher at 280.
In deciding the course of employment issue, Ohio law is settled that the determination of whether an employee is acting within the scope of his or her employment is a question of fact to be decided by the jury. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330, 587 N.E.2d 825. The only time that scope of employment becomes a question of law is when the facts are undisputed and there is no possibility of conflicting inferences. Osborne at 330; Czubaj v. E.B.P. (Oct. 12, 1995), Cuyahoga App. No. 65517, unreported, 1995 Ohio App. Lexis 4522. In the case at bar, however, there are facts in dispute and conflicting inferences. Fisher, supra.
Two cases illustrate the type of event that supports an award of benefits to off-duty police officers deemed to be within the course of employment at the time of injury: Luketic v. University Circle, Inc. (1999), 134 Ohio App.3d 217, 730 N.E.2d 1006, and Cooper v. Dayton (1997), 120 Ohio App.3d 34, 696 N.E.2d 640.
In Luketic, a 1999 decision from this court, the plaintiff, a police officer working for University Circle, Inc., was shot while attempting to thwart a robbery occurring inside the bank where he was conducting personal business. At the time of the shooting, plaintiff was on disability leave from his employment due to a prior injury. While at the bank, plaintiff was not in uniform, nor was he carrying his service weapon. Following the denial of workers' compensation benefits by the Bureau, plaintiff filed an appeal to the trial court, which found that plaintiff was not acting within the scope of his employment at the time he was shot and, therefore, granted summary judgment in favor of defendant. The trial court based its decision on the fact that the bank was located outside the jurisdiction where plaintiff served as an officer.
Reversing the trial court, this court found plaintiff's actions to be consistent with and logically related to his employment and his obligation as a peace officer to prevent the commission of a felony. In finding that plaintiff sustained his injuries in the course of and arising out of his employment, we explained as follows:
 As a matter of public policy and statutory mandate, a police officer is required to prevent an offense, in particular a violent felony, when it is in the police officer's ability to do so. This is an implicit duty in the employment of all police officers throughout the state * * *.
Luketic at 223. This court made this determination in accordance with R.C. 4123.01 prior to its amendment, which expressly covers off-duty police officers injured in the performance of their duties outside the territorial limits of the jurisdiction in which they regularly serve as police officers.
We also find the decision in Cooper v. City of Dayton (1997),120 Ohio App.3d 34, 696 N.E.2d 640, persuasive. In Cooper, plaintiff, a police officer for the City of Dayton, was working as a part-time security officer at a grocery store. In an attempt to capture a shoplifter and his accomplices outside the store, plaintiff sustained injuries, after jumping onto the front of the suspect's moving vehicle. Just prior to sustaining his injuries, plaintiff was seen drawing his service revolver, identifying himself as a police officer, displaying his badge, and ordering the suspects to raise their hands in the air. In addressing the City of Dayton's argument that plaintiff was acting as a private citizen when he tried to stop the suspects, the appellate court stated as follows:
 Given the record before us, we simply cannot agree that Cooper acted in a private capacity and merely tried to detain the suspects when he displayed his city badge and drew his service revolver * * *.
The court agreed that plaintiff was acting in the course of his employment as a City of Dayton police officer and that his injuries arose out of that employment.
In reviewing the Luketic and Cooper decisions, we find most salient those facts that distinguish the off-duty police officers in each case from an ordinary citizen. In Luketic, even though conducting personal business and not in uniform or armed, plaintiff, nonetheless, acted to prevent a felony by jumping the person attempting to rob the bank. In Cooper, in addition to showing his city badge and drawing his service revolver, plaintiff actively and directly attempted to thwart the commission of a felony, that is, tried to stop the shoplifter from escaping.
In both cases, the police officers, though off-duty, were undeniably acting as only officers must act. Unlike the ordinary citizen who has the luxury of refraining from action in the presence of a crime being committed, police officers enjoy no such privilege. Instead, police officers, such as Smith here, must remain vigilant and continually prepared to fulfill their statutory obligation to preserve the peace and protect the public when it is within their ability to do so, even when they are not on duty.
In the case at bar, unlike the officers in Luketic or Cooper, however, Smith's actions on the night in question are subject to too much interpretation for this court to, unequivocally, claim that he was or was not acting within the course of his employment prior to and at the time of his death. In adherence to Civ.R. 56, one must consider the entire stream of events in the hour or so before Smith was shot.
There was an exchange of looks between the two tables where Mackey and Whitmore and Smith, Wright and Jackson were seated. There is conflicting evidence, however, as to who initiated the stare-down and virtually no evidence that Smith escalated the visual exchange on his own.
Wright testified that he exchanged glances with Mackey, that he felt uncomfortable, and that it was his decision to leave the club. Even after Mackey and Whitmore exited the bar, it was Wright who asked Smith to leave the club and drive him home. Construing the evidence in a light most favorable to Smith, we do not find any definitive proof fitting the City and the Bureau's characterization that Smith, personally, created the events that led to his death. The record is unclear about whether Smith had any personal animosity towards Mackey. And, it is absolutely uncertain who, between Mackey and Smith, drew his gun first. The eyewitness testimony of Wright and Whitmore is in direct conflict. Whether Smith pulled his weapon first is another factor relevant to determining whether Smith was acting within the course of his employment the night he died. Because the question cannot be answered by reference to the * * * pleadings, depositions, answers to interrogatories, * * * affidavits, * * * [or] * * * transcripts of evidence, there remains a genuine issue of material fact upon which reasonable minds can differ. Nor can the second question whether Smith drew his weapon to escalate the situation or to attempt to thwart Mackey's commission of a felony be resolved on the record before us. It is possible for a jury to conclude that, at the time of his death, Smith was acting in the line of duty as a police officer.
The City and the Bureau strenuously argue that Smith's simply drawing his weapon should not be dispositive of the issue of whether or not he was acting within the course of his employment. We agree. Rather, the court must look to the totality of the circumstances involved the night Smith died to determine whether he was acting within the course of his employment when he drew his service weapon. We conclude that reasonable minds could differ in answering this question, and the trier of fact must be left to determine the significance of Smith's act of drawing his weapon against the backdrop of all the surrounding circumstances that night. Only a jury should decide whether Smith's conduct is marked by sufficient indicia of police authority to find that he was within the course of his employment as a police officer.
Finally, the City and the Bureau argue that Smith's intoxication the night he was killed eliminates any determination by this court that he was acting within the course of his employment. R.C. 4123.54(B) states that an employee injured during the scope of employment and who is intoxicated at the time of injury, will not be entitled to receive compensation from the Bureau where such intoxication or impairment is the proximate cause of the injury. R.C. 4123.54(B).
In this case, the record is devoid of any evidence, documentary or testimonial, indicating that Smith's intoxication the night he was killed was the proximate cause of his death. We therefore reject this argument by the City and the Bureau. We also reject the City and Bureau's claim that R.C. 2923.15 applies in this case.4 R.C. 2923.15 is a criminal statute that allows for criminal prosecution of a person found to be intoxicated while under the influence of alcohol or drugs while carrying a firearm.
4R.C. 2923.15 states:
 (A) No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordinance.
 (B) Whoever violates this section is guilty of using weapons while intoxicated, a misdemeanor of the first degree.
The statute does not apply in a worker's compensation case.
Given the above, we find that there remain genuine issues of material fact about whether Smith's death occurred within the course of and arising out of his employment as a City of Cleveland police officer. Accordingly, appellant's assignment of error is sustained and the decision of the trial court is reversed and remanded for a determination consistent with this opinion.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellees his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCURS; JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY.
[1] Appellees argue that we should not consider the testimony of the investigating police officers because that testimony is inadmissible. We need not reach this issue because the testimony from the actual eyewitnesses to the material events in this case constitutes a sufficient record from which we render our decision. alcohol, an activity begun earlier in the evening at two other local bars.
[2] Mackey was convicted of Smith's murder and the attempted murder of Wright.
[3] Although we are aware that workers' compensation appeals come to the trial court de novo, we note that the record is devoid of any evidence that the parties have ever, in the administrative proceedings below, disputed that Smith was anything but an employee under R.C.4123.01(A)(1).