[Cite as *Gullie v. Cuyahoga Cty.*, 2014-Ohio-4383.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100927

## KIM GULLIE

PLAINTIFF-APPELLANT

vs.

## CUYAHOGA COUNTY, OHIO, ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-800171

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** October 2, 2014

**ATTORNEYS FOR APPELLANT**

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

David J. Steiger
Karp & Steiger
1835 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEES**

**For Cuyahoga County**

Timothy J. McGinty
Cuyahoga County Prosecutor
Nora Graham
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**For The Industrial Commission of Ohio**

Mike DeWine
Ohio Attorney General
Susan A. Beres
Assistant Ohio Attorney General
State Office Building - 11th Floor
615 West Superior Avenue
Cleveland, Ohio 44113-1899

MARY EILEEN KILBANE, J.:

{¶1} Plaintiff-appellant, Kim Gullie ("Gullie"), appeals from the trial court's decision granting summary judgment in favor of defendant-appellee, Cuyahoga County, Ohio ("County"). For the reasons set forth below, we reverse and remand.

{¶2} The instant appeal arises from a motor vehicle accident that occurred while Gullie was on her lunch hour. Gullie is a social worker for the County, based out of the Jane Edna Hunter Building. Social workers usually, but not always, begin their days in the office. As a social worker, Gullie is responsible for removing endangered youths from their residences and regularly appeared in court. She also is responsible for taking displaced children to medical appointments and transporting them to visits with family members. Some of her visits are unannounced. Gullie was always on the go, and she often ate lunch in her car while traveling to work sites.

{¶3} On August 10, 2012, Gullie left the office to buy lunch. Gullie is provided a paid one-hour lunch break where she can eat wherever she chooses. At her deposition, Gullie testified that her original plan was to get lunch with a coworker, Andrea Jemison ("Jemison"), and eat in Jemison's car while they both proceeded to client visits. Gullie testified that she was going to an unannounced visit at her client "J.B.'s" house to obtain a urine specimen. When Jemison could no longer leave with Gullie for lunch, the plans changed and Gullie decided to get lunch by herself, return to the office to pick up Jemison, and then proceed to their clients' houses, while they ate their lunch in Gullie's

car.  Gullie testified that it was not unusual for a social worker to work during lunch hour.

{¶4}  Gullie left for lunch at approximately 1:00 p.m.  She was stopped at a red light at the intersection of East 55th Street and Cedar Road.  When the light changed, the car in front of her started to move forward but stopped suddenly.  Gullie was able to stop her car and avoid a collision, but the car behind her was not, and it hit Gullie's car from the rear.  Gullie was taken from the scene in an ambulance.

{¶5}  Jemison testified that on the day of Gullie's car accident she and Gullie were going out to lunch, but they had to change their plans because Jemison had car problems.  Instead, Gullie was to pick up lunch and bring it back to the office to eat there.  Gullie asked other coworkers if they wanted lunch brought back for them as well.  According to Jemison, it was not unusual for social workers to eat lunch in their cars on their way to a client's home.  The general rule was that the traveling social workers kept a written schedule.  They were sometimes required to conduct unscheduled visits, but they would always report the trip upon their return to their supervisor.

{¶6}  Jemison testified that she did not have plans with Gullie to visit clients that day, nor did she have plans for the two of them to eat lunch on the way to see the clients together.  Jemison testified Gullie told her she was going to visit a client's home either before or after she got lunch.  Jemison further testified that about 50 percent of her time at work is spent outside of the office.  When she travels for work, she uses her own car and the County reimburses her mileage for work-related visits.

**{¶7}** Christopher Malcolm ("Malcolm") was Gullie's direct supervisor at the time of the accident. At his deposition, he testified that on most days, if not all, a social worker's job begins by reporting to the office first. Malcolm acknowledged that approximately 40 percent of a social worker's time requires job duties outside of the office, including traveling to clients' homes and attending court hearings. Some social workers were "on-the-go a lot" and worked outside of their regular schedule. Approval to modify their schedule was not always needed, but the supervisors were supposed to be advised of the changes.

**{¶8}** Malcolm acknowledged that, at times, social workers would make unannounced visits, without first alerting their supervisors. It was not unusual for them to be out of the office for reasons that had not been documented in advance. He further acknowledged that it was not uncommon for them to work during this period. Even though they were supposed to be following their schedules, social workers were allowed to perform work duties during lunch. Generally, he did not object when he learned, after the fact, that they were conducting unscheduled tasks.

**{¶9}** There are certain days, however, when the social worker is required to remain in the office the entire day. The day of Gullie's accident was one of these mandatory in-office "writing days" where Gullie would have needed Malcolm's approval to do any type of work outside of the office. Gullie acknowledged at her deposition that August 10, 2012, was a day that she had to be in the office. On the day of the accident, Gullie worked in the office from 8:00 a.m. to 1:00 p.m. and then stopped to take her lunch

break. Gullie had a conference with Malcolm that morning to review the status of her cases. During this conference they reviewed the "J.B." case. Malcolm testified that this case did not require an immediate home visit, and Gullie never mentioned that she planned to visit the home later that day. However, he acknowledged it was possible that something could have been said during the meeting that would have prompted Gullie to make the visit. Despite the purported County directives, Gullie probably would have been entitled to make the trip.

{¶10} Gullie filed a claim for workers' compensation benefits for the injuries she sustained as a result of the accident. Her claim was initially approved, but was later denied by a district hearing officer in September 2012. The District Hearing Officer found that Gullie did not sustain an injury in the course of and arising out of her employment. The District Hearing Officer noted the evidence at the hearing demonstrated that Gullie was on her lunch hour when the accident occurred. Gullie testified that she was in the office during the morning hours, and then left to get lunch and bring it back to the office.

{¶11} A staff hearing officer then determined that Gullie was injured in the course and scope of her employment when she was rear-ended because she was on her paid lunch break and driving to a place to pick up her lunch to go. The staff hearing officer noted that Gullie is not a fixed-situs employee. The County appealed the staff hearing officer's decision to the Industrial Commission, which refused to consider the appeal.

The County then appealed the Industrial Commission's order to the Cuyahoga County Court of Common Pleas in January 2013.

{¶12} In November 2013, the County filed a motion for summary judgment, raising the following three grounds that entitled it to summary judgment: first, Gullie was injured while traveling to pick up lunch away from her employer's premises, which is not compensable under Ohio law; second, Gullie was a fixed-situs employee subject to the coming-and-going rule, and none of the exceptions to this rule apply to her; and third, even if Gullie was not a fixed-situs employee, her claim would still fail because she cannot show the causal connection between her injury and her employment under the "totality of the circumstances" test. Gullie opposed the motion, arguing that the facts demonstrate Gullie was injured during the course of her employment, she is not a fixed-situs employee, and the accident had a causal connection to her employment. The trial court, in applying, *Lord v. Daugherty*, 66 Ohio St.2d 441, 423 N.E.2d 96 (1981), syllabus, found in the County's favor stating that:

> Looking at the totality of the circumstances and construing the evidence in favor of the non-moving party, there is no causal connection between [Gullie's] injury and her employment with [the County]. [Gullie] was not on Cuyahoga County property when the accident occurred, the employer had no control over the scene of the accident, and there was no benefit to the employer from the injured employee's presence at the scene of the accident. At the time of the accident, [Gullie] was on an exclusively personal errand when she left her office building to pick up lunch and was involved in a motor vehicle accident. Therefore, [Gullie] is not eligible to participate in the Workers' Compensation Fund and [the County's] motion for summary judgment is granted.

**{¶13}** It is from this order Gullie appeals, raising the following single assignment of error for review.

Assignment of Error

The trial judge erred, as a matter of law, by granting summary judgment upon [Gullie's] Workers' Compensation appeal.

**{¶14}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264, 273-274.

**{¶15}** Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the

nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

**{¶16}** Generally, in order to be entitled to receive workers' compensation benefits, Ohio law requires that the worker demonstrate that (1) the injury occurred both "in the course of employment" and (2) it "arises out of that employment." *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 121, 1998-Ohio-455, 689 N.E.2d 917, citing *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271 (1990); *see also* R.C. 4123.01(C). The Ohio Supreme Court in *Fisher* recognized the conjunctive nature of this coverage formula, finding that the failure to satisfy both prongs precludes recovery under the Workers' Compensation Act. *Id.* at 277. The court additionally noted that Workers' Compensation statutes are to be liberally construed, but clarified that all elements of the formula must be met prior to the awarding of benefits. *Id.* at 277-278.

**{¶17}** "'In the course of' refers to the time, place, and circumstances of the injury, and limits compensation to injuries received while the employee was engaged in a duty required by the employer." *Bowden v. Cleveland Hts.-Univ. Hts. Schools*, 8th Dist. Cuyahoga No. 89414, 2007-Ohio-6804, ¶ 11 quoting *Fisher*. The "arising out of" prong employs a totality of circumstances test for "determining whether a casual connection exist[s] between an employee's injury and his employment." *Fisher* at 277. Such circumstances include: "(1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident;

and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Lord*, 66 Ohio St.2d 441, 423 N.E.2d 96, at syllabus.

{¶18} In the instant case, the County moved for summary judgment on the basis that Gullie cannot satisfy either prong because Gullie's injuries arose while she was driving to get lunch away from the fixed-situs of her employment at the Jane Edna Hunter Building when she was injured in a motor vehicle accident. The County further argued that Gullie cannot demonstrate the causal connection between her injury and employment under the *Lord* test. On the other hand Gullie, argues that she is not a fixed-situs employee bound by the coming-and-going rule because her regular work day did not always begin and end at one location. Rather, her work day was filled with trips throughout the County. Moreover, she spent between 40 to 50 percent of her time outside of the office, and it was not uncommon for her lunch hour to be coupled with employment duties.

{¶19} We note that the coming-and-going rule "is a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arises out of' the employment relationship so as to constitute a compensable injury under R.C. 4123.01(C)." *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 119, 1998-Ohio-455, 689 N.E.2d 917.

> As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist.

*MTD Prods., Inc. v. Robatin,* 61 Ohio St.3d 66, 68, 572 N.E.2d 661 (1991), citing *Bralley v. Daugherty*, 61 Ohio St.2d 302, 401 N.E.2d 448 (1980). The rationale supporting the coming-and-going rule is that the Workers' Compensation Act "'contemplate[s] only those hazards to be encountered by the employee in the discharge of the duties of his employment, and do not embrace risks and hazards, such as those of travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally.'" *Ruckman* at 119, quoting *Indus. Comm. v. Baker*, 127 Ohio St. 345, 188 N.E. 560 (1933), paragraph four of the syllabus.

{¶20} The Ohio Supreme Court has held that the coming-and-going rule only applies to fixed-situs employees. *Id.* In determining whether an employee is a fixed-situs employee and, therefore, within the coming-and-going rule, "the focus is on whether the employee commences his substantial employment duties only after arriving at a specific and identifiable work place designated by his employer." *Id.*, citing *Indus. Comm. v. Heil*, 123 Ohio St. 604, 176 N.E. 458 (1931). "The focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment." *Ruckman* at 120.

{¶21} In the instant case, the deposition testimony demonstrated that social workers' days were filled with trips throughout the County. As a social worker, Gullie is responsible for removing endangered youths from their residences and regularly appeared in court. She also is responsible for taking displaced children to medical appointments

and transporting them to visits with family members. Social workers' regular work day did not always begin and end at the office, and sometimes they had to work outside regular hours. In Malcolm's deposition testimony, he acknowledged that 40 percent of a social worker's time was spent outside the office. Jemison placed the figure at 50 percent. Malcolm further acknowledged that the performance of work duties during the social workers' lunch hours was not an uncommon occurrence, and it was not unusual for social workers to be out of the office for reasons that had not been documented in advance. Malcolm conceded it was possible that something could have been said during his meeting with Gullie that would have prompted her to visit J.B., and Gullie probably would have been entitled to make the trip.

{¶22} This court has explained that "[t]he determination of whether one is a fixed-situs or nonfixed-situs employee must be made in light of the overall employment duties, not from an overly constrained examination of the activities on one day when an accident happens to occur." *Klamert v. Cleveland*, 186 Ohio App.3d 268, 2010-Ohio-443, 927 N.E.2d 618, ¶ 13 (8th Dist.). We further explained that:

> In *Ruckman*, the Ohio Supreme Court analyzed oil rigging employees' job duties and determined "[t]he evidence demonstrates that the riggers here had no duties to perform away from the drilling sites to which they were assigned. The riggers' workday began and ended at the drilling sites. Accordingly, although work at each drilling site had limited duration, it was a fixed work site within the meaning of the coming-and-going rule." *Ruckman* at 120. The Court's analysis was not limited to the day of injury, but an overall view of the substantial employment duties of the employees in question.

*Id.*

{¶23} Here, the deposition testimony of Gullie, Malcolm, and Jemison create an issue of material fact regarding the nature of Gullie's situs of employment. In examining Gullie's substantial work duties as a social worker, it was not uncommon to begin the work day outside of the office, make unannounced visits, work during her lunch hour, and work outside of the office for up to 50 percent of the time.

{¶24} Based on the circumstances of the instant case, a genuine issue of material fact exists as to whether Gullie is a fixed-situs employee. Therefore, we find that the trial court erred in granting summary judgment in the County's favor.

{¶25} Accordingly, the sole assignment of error is sustained.

{¶26} Judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KENNETH A. ROCCO, J., CONCUR