[Cite as *Elyria v. Scott*, 2015-Ohio-4619.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| CITY OF ELYRIA | | C.A. No.    13CA010459 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRADLEY SCOTT, Deceased, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | | CASE No.    11CV172960 |

DECISION AND JOURNAL ENTRY

Dated: November 9, 2015

CARR, Judge.

{¶1}   Appellant, City of Elyria, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   On August 27, 2004, Bradley Scott, an Elyria Police Officer, attended a union-sponsored steak fry.  Scott was a union officer, and his union duties included organizing, setting up for, and running the steak fry. While setting up for the steak fry, a storm approached.  Scott and an event volunteer, Detective Lisa Dietsche, left the site of the steak fry.  Their intention was to pick up some needed supplies for the steak fry, drop Scott's motorcycle at his residence, and get something to eat.  Scott and Dietsche decided to drop off Scott's motorcycle first and then ride together in Dietsche's vehicle while completing their errands.  Tragically, on the way to Scott's residence, he was struck and killed by another motorist.

{¶3}    Under the "union leave" provision of the collective bargaining agreement between the Elyria Patrolmen's Association and the City of Elyria ("the City"), the union was allotted twenty days per year in which selected members of the union could take paid leave to perform union functions. This provision allowed members to be paid their regular salary while performing union functions, without using their personal vacation time. At the time of his death, Scott was on supervisor-approved union leave and was receiving his regular salary.

{¶4}    The appellee, Scott's widow, filed a death benefits claim with the Ohio Bureau of Workers' Compensation. After death benefits were approved, the City appealed the order. The Industrial Commission of Ohio allowed the claim, and the City appealed to the Lorain County Court of Common Pleas. Mrs. Scott also filed a complaint in the Lorain County Court of Common Pleas. Both parties filed cross-motions for summary judgment, and trial court denied both motions. Subsequently, Mrs. Scott filed a voluntary dismissal, without prejudice.

{¶5}    Mrs. Scott re-filed her complaint, and both parties filed cross-motions for summary judgment a second time. The trial court granted Mrs. Scott's motion for summary judgment, finding that Scott was in the course and scope of his employment at the time of his death. Thereafter, the City filed a timely notice of appeal.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT THERE WERE NO ISSUES OF MATERIAL FACT.

{¶6}    In its sole assignment of error, the City argues that there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and the evidence demonstrates that reasonable minds can come to but one conclusion.

Specifically, the City argues, as a matter of law, that Scott's death did not occur during the course and scope of his employment with the City and participation in the Ohio Workers' Compensation system should not be allowed.[1] The parties do not dispute the relevant facts and agree that the issue is a question of law.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist. 1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).

---

[1] While this case was pending on appeal, the Ohio Supreme Court issued its opinion in *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, which clarified the analysis required relevant to workers' compensation cases, reiterating the well-established tests and considerations noted within this opinion. The *Friebel* court reaffirmed that the dual purpose test recognized by some jurisdictions outside of Ohio does not and has never been applicable in Ohio. This Court ordered the parties to this appeal to submit supplemental briefs addressing whether the recent holding in *Friebel* had any applicability to the issues in this appeal, i.e., whether the dual purpose test was implicated in the motions below or the trial court's judgment. All parties agreed that the dual purpose test played no role in the matter before the trial court and that the appeal was ripe for determination on the basis of the application of the well-established tests cited herein.

Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id*. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} R.C. 4123.01(C) defines injury for the purpose of workers' compensation as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."

{¶11} In order for an employee's injury to be compensable by the state workers' compensation fund it must be "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). This test is conjunctive; both prongs of the formula must be satisfied before compensation will be allowed. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277 (1990). As a general rule, the Ohio workers' compensation statutes must be "liberally construed in favor of the employee." R.C.4123.95; *Fisher*, 49 Ohio St.3d at 278. It is "axiomatic" that this rule of construction applies to the phrase "in the course of, and arising out of." *Id*.

In the Course Of Employment

{¶12} The Supreme Court of Ohio defined "in the course of employment":

The phrase 'in the course of employment' limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. * * * "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." * * *

> An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.

(Internal citations omitted.) *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120 (1998). The determination of whether an injury occurs in the course of employment requires courts to look at the time, place, and circumstances of the injury. *Id.*, citing *Fisher,* 49 Ohio St.3d at 277. These factors are used to determine "whether the required nexus exists between the employment relationship and the injurious activity." *Ruckman*, 81 Ohio.St.3d at 120.

{¶13} In this case, Scott was injured while performing duties as an officer of the union. His activities focused on organizing, setting up for, and running the union-sponsored steak fry at a local civic pavilion. The steak fry was regularly attended by union members, their families, and other members of the community. At the time of the accident, Scott was on paid union leave, pursuant to the contract between the union and the City. The contract expressly provided for union delegates to perform union work while being paid by the City. Scott's supervisor approved his request for eight hours of union leave, and Scott received his regular pay on that day. Although the accident did not occur at Scott's workplace, Scott traveled to fulfill his responsibilities for the steak fry. Thus, the travel was not exclusively personal in nature. It was directly related to Scott's union responsibilities.

{¶14} In this case, fulfilling the obligations of being a union officer and preparing for a union function were consistent with the contract for hire and logically related to Scott's employment. The contract between the union and the City of Elyria governed Scott's employment and his ability to function in a union capacity on city time. As stated above, the contract expressly provided for union delegates to perform union work while being paid by the City. The City and the union clearly contemplated employees performing union functions while

being paid by the City. Furthermore, the parties agreed upon a system by which those functions would be accomplished.

{¶15} This case is analogous to *Kohlmayer v. Keller*, 24 Ohio St.2d 10 (1970). In that case, the Supreme Court of Ohio found that an injury sustained by an employee while attending a picnic that was sponsored, supervised, and paid for by the employer for the purpose of generating friendly relations with employees occurred in the course of employment. *Id*. at 15. The activity was consistent with the contract for hire and logically related to the employment. *Id.* Among the factors cited by the Court were the purpose to improve employee relationships and the employer's administrative and leadership role in the event. *Id.* The Court noted the importance of improved employee relationships and the resulting benefit to employers, even when those benefits are not immediately measurable. *Id.* Similar to *Kohlmayer*, the City of Elyria played an administrative role by including specific provisions in the contract between the union and the City sanctioning employees to lead union activities on the City's time, creating a system by which that would be done, and approving Scott's union leave pursuant those provisions. Furthermore, as the employer in *Kohlmayer* stood to benefit from improved employee relations resulting from the company picnic, the City stood to benefit from the union-sponsored steak fry.

{¶16} In contrast, this case is distinguishable from *Koger v. Greyhound*¸ 90 Ohio App.3d 387 (1st Dist.1993), where an employee was injured while picketing during a strike. The court found that picketing was not incidental to the employee's employment duties. *Id.* at 390. His employer had no role in governing the picketing and his presence on the picket line came at the expense of the union. Here, Scott's leave required approval from the City and Scott performed his duties on the City's time.

{¶17} Based upon the undisputed facts and drawing all inferences in the City's favor, reasonable minds could come to but one conclusion that Scott's injury arose in the course of his employment.

B. Arising Out Of Employment

{¶18} Whether an injury arises out of employment is a question of fact. See *Pilar v. Ohio Bur. of Workers' Comp.,* 82 Ohio App.3d 819 (1992); *Dolby v. Gen. Motors Corp.,* 62 Ohio App.3d 68 (1989). "The "arising out of" prong denotes a causal connection between the employment and the injury." *Luo v. Gao*, 9th Dist. Summit No. 23310, 2007-Ohio-959, ¶ 11, citing *Fisher,* 49 Ohio St.3d at 277-278. "To determine whether a sufficient causal relationship exists, Ohio courts employ a 'totality of the facts and circumstances' analysis." *Fisher*, 49 Ohio St.3d at 277. Relevant factors include "(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Id.*, quoting *Lord v. Daugherty*, 66 Ohio St.2d 441 (1981), paragraph one of the syllabus. However, these factors are not intended to be exhaustive. *Ruckman*, 81 Ohio St.3d at 120.

{¶19} In this case, Scott left the event site and the City did not control the location of the accident. However, Scott intended to pick up supplies and return to the site of the steak fry at the time of the accident. The duties associated with running the event gave rise to the departure from the event location. Furthermore, the event itself benefitted the employer. It allowed officers to socialize with other officers and their families and boosted morale among employees.

{¶20} This case is similar to *Fisher*, where the Supreme Court of Ohio held that a teacher's injuries arose out of her employment. *Fisher,* 49 Ohio St.3d at 279. In *Fisher*, a

teacher was injured while collecting money for an informal flower fund used to send flowers to coworkers during times of bereavement or to celebrate significant life events. *Id.* at 275-76. While collecting money at a neighboring school, the teacher fell and was injured. *Id.* The teacher was not assigned to the neighboring school or instructed by the school board to collect at that school. *Id.* Instead, she went on her own volition. *Id.* The Court held that the teacher's injury occurred in the course of her employment despite not occurring at her workplace. *Id.* at 279. Although the school board did have control over the neighboring school, the Court also took into account the school board's knowledge of the fund's existence and its acquiescence to the fund's perpetuation. *Id.* at 280. Similar to the teacher in *Fisher*, the injury did not occur at Scott's workplace and his employer did not direct his actions. Additionally, the City was fully aware of the activity and acquiesced to its existence by approving union leave so employees could work the event.

{¶21} Furthermore, as in *Fisher*, the context surrounding the accident supports the conclusion that Scott's accident arose out of his employment. Although the accident occurred while en route to Scott's residence, the overall purpose of the errand was focused on facilitating the steak fry. Scott and Dietsche intended to purchase supplies for the event, buy a meal for themselves, and drop off Scott's motorcycle at his residence. The supplies were needed to feed patrons of the event. Because he was setting up the event at a civic club pavilion, purchasing a meal from a local restaurant was a convenient option which would have allowed Scott to continue his primary duties of preparing for the steak fry. Thus, the injury arose out of Scott's employment because there is a causal connection between the injury and his employment.

{¶22} This case is distinguishable from *Koger, supra*, on the issue of whether an injury arose out of employment as well. *Koger*, 90 Ohio App.3d at 391. In that case, the court found

that picketing, a confrontational cessation of work, did not benefit the employer, and compensation was denied. *Id.* The employee's activity at the time of his injury was in pursuit of his own competing interest, rather than common interests. *Id.* In this case, Scott did not cease working in a manner confrontational to the City, and his efforts were not in pursuit to his own competing interest. Rather, there was benefit to the City and the union.

{¶23} The undisputed facts demonstrated that duties associated with the event gave rise to Scott's departure from the event site and benefitted the City by boosting morale among employees. This supports the legal conclusion that his injuries arose out of his employment.

C. Conclusion

{¶24} Because no genuine issues of material fact remained to be litigated; because Mrs. Scott was entitled to judgment as a matter of law; and because reasonable minds could come to but one conclusion, that conclusion being adverse to City, the trial court properly granted Mrs. Scott's motion for summary judgment.

III.

{¶25} City's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS.

HENSAL, P. J.
DISSENTING.

{¶26} I do not agree that Mr. Scott's death occurred "in the course of" and "arising out of" his employment. R.C. 4123.01. It is not disputed that Mr. Scott was taking "leave" at the time of his death. Although the union's contract with the City allowed Mr. Scott to use "union leave" instead of his personal vacation time for his absence from duty, the fact that he had to use any form of leave strongly suggests that the steak fry was not "a required duty in the employer's service" and had no more than an incidental benefit to the City. *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120 (1998). I do not agree with Mrs. Scott's argument that "union leave" is akin to an officer appearing in court to testify. Rather, upon careful consideration of all of the facts, I would hold that Mr. Scott's death is not compensable under Section 4123.01.

APPEARANCES:

MARGARET O'BRYON, Attorney at Law, for Appellant.

DAVID J. BRIGGS, Attorney at Law, for Appellee.

TIMOTHY X. MCGRAIL, Assistant Attorney General, for Appellee.